Maisha WILLIAMS, Appellant–
Plaintiff,

v.

RIVERSIDE COMMUNITY COR-
RECTIONS CORPORATION,
Appellee–Defendant.

No. 49A02–0508–CV–732.

Court of Appeals of Indiana.

May 3, 2006.

rections Corporation. After terminating Williams' employment, Riverside did not pay her for any accrued sick days or vacation days, and it reduced her hourly wage for her final pay period to the minimum wage rate of $5.15 per hour. Williams filed a claim with the trial court seeking damages under Indiana's Wage Claims Statute. The parties filed various motions with the trial court, including cross motions for summary judgment on the issues of the reduced hourly wage rate, vacation pay, and sick pay. The trial court found in favor of Riverside on each of these issues, and Williams appealed to this Court. We find, among other things, that Williams was entitled to summary judgment on the matter of the reduction in her hourly wage rate but that the trial court properly awarded summary judgment to Riverside regarding her claims for vacation and sick pay. Accordingly, we affirm in part, reverse in part, and remand the case to the trial court.

## Facts and Procedural History

Riverside Community Corrections Corporation ("Riverside" or "RCCC") is a not-for-profit penal facility operating a residential work-release program that houses approximately 160 adult male offenders. Maisha Williams worked as a corrections officer at Riverside from September 3, 2003, through October 17, 2003, a total of forty-five days. Williams was hired as an at-will employee earning $9.25 per hour. Williams began accruing vacation and sick pay at the start of her employment but was told that she was ineligible to "use" those benefits until January 1, 2004. Williams was informed of this policy through Riverside's "New Employee and RCCC Hiring Agreement," which Williams reviewed and signed on her hire date. *See* Appellant's App. p. 193.

According to Riverside, all of its employees are provided with and subject to the

Ronald E. Weldy, Abrams Weldy Drummond & Huiras, PA, Indianapolis, for Appellant.

Stephen J. Peters, Lisa Cross Price, Stewart & Irwin, P.C., Indianapolis, for Appellee.

L. Alan Whaley, Steven F. Pockrass, Brian J. Paul, Ice Miller, Indianapolis, for Amici Curiae Defense Trial Counsel of Indian and the Chamber of Commerce, Inc.

James D. Johnson, Rudolph, Fine, Porter & Johnson, LLP, Evansville, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Maisha Williams appeals from the grant of summary judgment in favor of her former employer, Riverside Community Cor-

"Riverside Community Corrections Corporation Employee Handbook" ("the Handbook"). As a condition of employment, each employee must sign an acknowledgment of receipt for the Handbook and supplemental revisions, as provided. The acknowledgment form contains the following:

> By signing and dating this acknowledgment, the employee attests that an RCCC Employee Handbook ... has been received.
>
> The employee also has been informed and understands that no contractual obligations for employment have been made or implied and that employment between RCCC and the employee is strictly "at will."
>
> It is the employee's responsibility to be familiar with the information contained in this handbook. Should there be any questions regarding any area/issue of the RCCC Employee Handbook, the employee may go to her/his supervisor and/or the Director of Human Resources of RCCC.

*Id.* at 208.

On her hire date, Williams met with Riverside's Human Resources Director, Lisa Gaus, and reviewed the Handbook. Williams signed the acknowledgment form at that time. The Handbook contained the following provisions relevant to the parties' dispute:

**This Handbook is not a contract of employment.** ... Without a contract of employment, **your employment is strictly at will.**

*Id.* at 197 (emphases in original).

> Regular employees who have completed 90 days of continuous service are eligible for company benefits ....
>
> Regular employees begin to accrue sick time on the first day of regular employment, and are eligible to take paid sick time after 90 days of continuous regular employment .... RCCC does not pay employees for unused sick time at the time of termination.

*Id.* at 205–06.

> Beginning with the regular employee's first day of work, Vacation Time Pay accumulates at the rate of one day per month during the first four years of employment. This amounts to twelve (12) paid vacation days per year. After 6 months of continuous regular employment, a regular employee is eligible to take paid vacation time .... [1]
>
> Should an employee voluntarily resign from employment, and provided that the required two week minimum notice is given, RCCC will pay out the employee's unused Vacation Time.
>
> **If less than two weeks' notice of resignation (voluntary termination) is given OR an employee is terminated by**

---

1. We observe several discrepancies in the dates under which Riverside's employees reportedly become eligible for benefits. First, Riverside's Hiring Agreement, which was given to Williams on her hire date, lists her "Benefits Start Date" as January 1, 2004, which corresponds to a period of 123 days of continuous employment. The Hiring Agreement makes no distinction regarding the amount of time an employee must work to be eligible to use sick days and vacation days or, for that matter, no mention of one or the other, as it only refers generically to "benefits." Further, it is unclear how the benefits start date is calculated if not by calendar days. Next, we note that the Handbook indicates that an employee is eligible for sick pay after ninety days of employment and for vacation pay after six months. While these discrepancies may help to explain why an employee of Riverside may become confused about the availability of their benefits, we do point out that each of these provisions indicates a waiting period of no less than ninety days before Riverside considers an employee eligible to receive any of the benefits Williams claims.

**RCCC, no unused vacation time will be paid.**

Employees with less than six (6) months of consecutive service are not eligible for the Paid Vacation Time benefit, therefore no accrued vacation time will be paid out at the time of either voluntary or involuntary termination.

*Id.* at 207 (emphases in original). In addition, the Handbook outlined permissible uses of sick time for reasons other than employee illness, noting that sick time could be taken "after 90 days of continuous regular employment," and, upon obtaining approval, an employee could use sick time "for bona fide medical appointments of the employee and the employee's dependents," "prior to or during a Medical or Personal Leave of absence," or, upon exhaustion of accrued vacation time, to care for a dependent or elderly parent. *Id.* at 205–06. The Handbook also states, "RCCC does not pay employees for unused sick time at the time of termination." *Id.* at 206.

Also on her hire date, Williams received and signed the "Riverside Community Corrections Corporation Statement of Understanding: Final Notification" (the "Final Wage Payment Notification form"). This form included the following provision with regard to involuntary terminations:

Employees who are, for any reason or no reason, terminated by RCCC shall have their pay rate during their final pay period reduced to the legal Minimum Wage Rate of the United States of America. Minimum wage will be paid for all the hours worked in the final pay period for which the employee was employed by RCCC. Accrued vacation time is forfeited. This applies to both hourly and salaried employees.

*Id.* at 209–10.

On October 17, 2003, Riverside terminated Williams' employment. Williams' last paycheck was for 34.5 hours of work paid at the minimum wage rate of $5.15 per hour. Williams does not dispute Riverside's right to terminate her as an at-will employee, nor does she dispute the cited reasons for her termination, which are irrelevant to our review.

On November 23, 2003, Williams filed suit against Riverside under Indiana Code § 22–2–9–1 *et seq.* (the "Wage Claims Statute"),[2] arguing that she was entitled to 7.4 hours of accrued sick pay, 14.76 hours of accrued vacation pay, and the difference between her usual pay rate of $9.25 per hour and the minimum wage rate of $5.15 per hour, for the 34.5 hours she worked during her final pay period. On February 11, 2004, Riverside responded to Williams' claim and filed a counterclaim asserting that Williams' suit was frivolous and without merit. Riverside presented testimony taken from a deposition of Williams to establish that she was aware of company policies regarding vacation and sick pay and the determination of pay upon termination. Both parties eventually filed motions for summary judgment.[3] Williams

---

**2.** The Indiana Wage Claims Statute provides, in pertinent part, that "[t]he term 'wages' means all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." Ind.Code § 22–2–9–1(b). The statute further provides that "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employ- ee shall become due and payable at regular pay day for pay period in which separation occurred . . . ." *Id.* at § –2(a).

**3.** Williams references an amended motion for summary judgment, indexed at Appellant's Appendix p. 116, and states in her brief that this was filed on October 4, 2004. However, this amended motion is not file-stamped, does not appear in the Chronological Case Summary, and is not signed by Williams or her attorney as having been filed. As there is no

also filed a motion to strike evidence with regard to several statements Riverside cited from Williams' deposition. On February 24, 2005, the trial court heard oral arguments on these various motions and, on March 23, 2005, denied Williams' motion for summary judgment and her motion to strike and granted Riverside's cross-motion for summary judgment and Riverside's own motion for summary judgment on the frivolous action claim. This appeal now ensues.

## Discussion and Decision

Williams raises several issues, which we restate as follows: (1) whether the trial court erred in denying her motion for summary judgment and granting Riverside's cross-motion for summary judgment on Williams' claim for damages; (2) whether the trial court erred in granting summary judgment on Riverside's frivolous action counterclaim; and (3) whether the trial court erred in denying Williams' motion to strike the testimony obtained during her deposition. We address each issue in turn below.

## I. Summary Judgment on Williams' Claims

Williams alleges that the trial court erred in denying her motion for summary judgment and granting summary judgment to Riverside on her claims regarding her hourly wage reduction, vacation pay, and sick pay under the Wage Claims Statute.[4] The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bushong v. Williamson*, 790 N.E.2d 467, 474

(Ind.2003). On appeal, our standard of review is the same as that of the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Am. Home Assurance Co. v. Allen*, 814 N.E.2d 662, 666 (Ind.Ct.App. 2004), *reh'g denied, trans. dismissed.* We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Id.* On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. *Id.* at 1038–39.

At the outset, we note that Williams' claims underscore certain differences between "present" and "deferred" compensation. *See, e.g., Barker v. Kansas*, 503 U.S. 594, 112 S.Ct. 1619, 118 L.Ed.2d 243 (1992) (debating the classification of military retirement benefits as either present or deferred compensation for purposes of Kansas' state income tax scheme); *In re Hann*, 655 N.E.2d 566, 571–74 (Ind.Ct. App.1996) (Chezem, J., dissenting) (distinguishing between present and deferred compensation for purposes of the division of stock options in a marriage dissolution proceeding), *trans. denied.* For our purposes, present compensation refers generally to the hourly or salaried wages of an employee, and it commonly constitutes the very consideration underlying the employ-

---

record, then, of this amended motion having been filed or having been before the trial court on summary judgment, we must disregard its contents, and we refer only to Williams' original motion for summary judgment, Appellant's App. p. 271, when either motion is cited to in the briefs.

4. We note that Williams brings her claims only under Indiana statutory law and that she presents no federal or constitutional claims in support of her position.

ment contract.[5] The defining characteristic of present compensation, at least with regard to an employee's hourly or salaried wage, is that it wholly and indefeasibly vests upon the performance of labor without any additional requirements; an employee is immediately entitled to a pro rata share of his present compensation when labor is performed. Deferred compensation, on the other hand, only vests upon the "performance" of some requirement in addition to—or even apart from—the performance of labor, be it the passage of time, the attainment by an employee of a certain age, or any other variable as set forth either by policy or by agreement of the parties. Further, because present compensation indefeasibly vests upon the performance of labor, it can never be forfeited by an employee absent a contractual agreement to the contrary. *Cf. Haxton v. McClure Oil Corp.*, 697 N.E.2d 1277, 1281 (Ind.Ct.App.1998), *overruled on other grounds by St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 (Ind.2002) (upholding a clause in a written employment contract providing for a reduction in an employee's hourly wage rate in the event of involuntary termi-

nation of employment). In contrast, deferred compensation is subject to forfeiture unless it arises from a contract—as opposed to an employer's policy—and that contract lacks any express terms providing for its forfeiture. With this framework in mind, we address Williams' claims against Riverside.

## A. Present Compensation

### 1. Reduction in Hourly Wage

■ We first address Williams' assertion that the trial court erred in denying her motion for summary judgment and granting summary judgment to Riverside with respect to the reduction of her hourly wages. She contends that her hourly wage was a contractual term of her employment and, therefore, that Riverside could not decrease that wage absent her express agreement. Additionally, Williams suggests that she acquired a vested interest in her hourly wages immediately upon rendering services to Riverside and that she was entitled to those wages at that time, albeit pursuant to the terms of the Wage Payment Statute.[6] Be-

5. This opinion does not seek to limit present compensation to hourly or salaried wages, and we wish to be clear that, depending on the structure of the employment relationship, various other forms of compensation can be considered "present compensation," even where certain forms might ordinarily constitute "deferred compensation." Furthermore, both present and deferred forms of compensation may constitute the consideration underlying an employment contract; such an inquiry turns on basic contract principles. We observe here, however, that many employment-at-will contracts have only the hourly or salaried wage of the employee as consideration underlying the contract.

6. Indiana's Wage Payment Statute, Indiana Code § 22–2–5–1, states:
  (a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any

court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.
The statute, then, regulates the amount and the frequency with which employers must pay their employees. *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 703 (Ind.2002). It is worth noting that the statute does not provide that employees only acquire a vested interest in their earned wages at the time that payment is due under the statute. Ordinarily, an employee's interest in her hourly wages vests upon rendering services in a given hour. *See Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind. 2004) (absent an agreement to the contrary,

cause Williams' hourly wage can be characterized only as "present compensation" in accord with our above discussion, we agree.

Williams first argues that it was improper for Riverside to reduce her wage rate because that rate was part of her employment contract and she never contractually agreed to any reduction under Riverside's termination policy. In other words, she argues that her hourly wage, as present compensation, was a term of her employment contract and was thus subject to forfeiture only by way of a contractual agreement to that effect, which she did not have. In addressing this claim, then, we must determine (1) whether Williams' hourly wage was, indeed, a term of her employment contract and (2) if it was a term of her contract, whether it was subject to any contractual agreement providing for forfeiture upon involuntary termination.

■ The elements of an employment contract are established by "[employer's] (1) offer to pay (2) consideration for the Employee's services and (3) the Employee's acceptance through performance of services." *Whinery v. Roberson*, 819 N.E.2d 465, 473 (Ind.Ct.App.2004), *trans. dismissed.* Here, neither party disputes that the consideration offered to Williams included an hourly wage of $9.25 per hour; indeed, as no other evidence has been presented regarding other terms of the parties' contractual agreement, this hourly wage may have been the *entire* consideration offered. Williams' hourly wage rate, then, was a term of her employment contract with Riverside.

an employee's interest in wages vests upon rendering services). The Wage Payment Statute simply establishes the maximum time frame in which those vested wages may be transferred from the employer to the employee.

■ We next examine whether Williams agreed to forfeit part of her hourly wage in the event of involuntary termination. Riverside contends that its Final Wage Payment Notification Form constitutes such an agreement, and it directs us to *Haxton* to support its contention. In *Haxton,* this Court upheld a contractual agreement between the parties providing for a wage reduction similar to the reduction in this case. 697 N.E.2d at 1281. Our review of Riverside's Final Wage Payment Notification Form reveals, however, that *Haxton* is inapposite to the facts before us.

The Final Wage Payment Notification Form states at the top of the page and in large, bold text that it is a "Statement of Understanding." Appellant's App. p. 209. It includes the following pertinent language:

All RCCC employees are notified in writing of this change in policy via this Statement of Understanding.

\*  \*  \*  \*  \*  \*

Employees who are, for any reason, terminated by RCCC shall have their pay rate during their final pay period reduced to the legal Minimum Wage of the United State[s] of America. Minimum wage will be paid for all the hours worked in the final pay period for which the employee was employed by RCCC.

\*  \*  \*  \*  \*  \*

My signature on this page attests that I have received a copy of RCCC's Statement of Understanding, Change of Final Wage Payment policy. I understand that this acknowledgment shall be placed in my personnel file.[7]

7. The Final Wage Payment Notification Policy also contains a statement that "The legality of this policy has been established reference [sic] the Fair Labor Standards Act, Minimum Wage Law and Federal Regulation 29 CF[R],

*Id.* at 209–10. Under *Haxton*, argues Riverside, Williams' signature on this form permits Riverside to reduce her wages in the event she is involuntarily terminated. Riverside claims in its brief that "Williams *knew and acknowledged* that if she failed to adhere to Riverside's standards of conduct, she would only earn $5.15–minimum wage . . . . Williams *agreed* to these terms at the outset of employment." Appellee's Br. p. 26 (emphases added).

Riverside is, in part, correct here; Williams did know of and acknowledge Riverside's purported wage reduction policy. However, nothing in the record indicates that she *agreed* to this policy or that it was contractual in nature. Indeed, Riverside candidly admits that "Riverside's Notification policy *is not designed to be a contract* . . . ." *Id.* at 25 (emphasis added). Because the amount of Williams' wage was a contractual term constituting present compensation, any forfeiture of that amount must also have been contractually obtained. It follows that since Williams did not, in fact, *agree* to a contractual reduction of her hourly wage, Riverside cannot reduce it under the cover of mere *knowledge and acknowledgment* of an admittedly non-contractual policy.

■ In a similar vein, Williams also argues that she was entitled to her hourly wages upon performing labor for River-side, and so Riverside cannot require her, after the fact, to return a portion of those already-vested wages to them absent a contractual agreement. This is in contrast to deferred compensation, where an employee's right to receive such compensation often only vests upon the realization of variables besides or in addition to labor. Again, Williams' argument follows our discussion of the differences between present and deferred compensation. Hourly pay, as present compensation, indefeasibly vests in an employee immediately upon the performance of labor for the employer. Once Williams performed the labor necessary to earn her hourly wage, allowing Riverside to divest Williams of this indefeasibly vested interest absent a contractual agreement providing for divestiture would be allowing Riverside to take that to which Williams already has acquired an absolute right. We cannot condone such a practice. Williams' argument is correct on this issue. The trial court erred in granting summary judgment to Riverside with regard to the reduction in Williams' hourly pay rate, and we remand this matter to the trial court for entry of summary judgment on Williams' behalf.

### B. Deferred Compensation

■ Having dealt with Williams' hourly wage claim under the present compensation umbrella, we now turn to the two

section 541.118C." Our research of 29 C.F.R. § 541.118c indicates that the regulation has never addressed the actions Riverside takes under the Wage Payment Notification form. The regulation expressly addresses, first of all, only salaried employees and not hourly employees. Indeed, 29 C.F.R. § 541.118 is generally entitled "Salary basis." Moreover, nothing in the regulation permits an employer to reduce the wages of an employee ordinarily paid at a rate above minimum wage to the minimum wage rate upon termination. Instead, the regulation merely provides that where a salaried employee commences or terminates his employment in the middle of a weekly pay period, his salary may be calculated as a pro rata share for that pay period. We mention this here because we are concerned with Riverside's inclusion of this regulation in support of its wage reduction policy. It goes without saying that the presentment of a document claiming what can only appear to non-lawyers to be a very legitimate form of legal support should contain only such support as can be demonstrated to be legally valid. Where that is not the case, the cited legal support may appear to be no more than a tool of intimidation used to prevent employees from asking too many questions about a legally questionable policy.

forms of deferred compensation—vacation and sick pay—covered by Williams' claim. Deferred compensation can present a wide array of issues to be addressed. This stems from the fact that there are so many varieties of deferred compensation, and these benefits are often manipulated to address the particular needs of a given employer and its individual employees. Common forms of deferred compensation include various structures of "paid time off," pension benefits, retirement savings plans, stock options, healthcare plans, annuities, etc. Unlike present compensation, which is typically contract-driven, deferred compensation may be either contract- or policy-driven, or a hybrid of the two, with some benefits falling into one category and some into the other depending on the structure of the employment relationship. Forfeiture of deferred compensation, then, may require a contractual basis, or it may simply follow the policy of a particular employer in a particular case.[8] We recognize that deferred compensation benefits must be dealt with on a case-by-case basis taking into account the particular intricacies of the employment relationship between any two parties before the court. Nevertheless, the facts of the case before us happen to coincide with established precedent, and we dispose of these issues accordingly.

Williams generally argues that the trial court erred in granting Riverside's motion for summary judgment because she claims that she was entitled to receive her accrued vacation and sick pay upon termination. She argues that because vacation and sick pay constitute deferred compensation under Indiana law, her right to receive vacation and sick pay vested as she worked the hours under which these benefits accrued. Riverside counters, however,

that their policy, as published in their employee handbook, clearly sets forth the conditions under which their employees' rights to vacation and sick pay benefits may vest; because Williams was not employed by Riverside for the length of time relevant to her receipt of vacation and sick pay, her rights to receive these benefits never vested, and she may not now claim these benefits. Riverside's position is correct, although for different reasons as between vacation and sick pay benefits.

### 1. Vacation Pay

■■■■ Williams contends that she is entitled to any vacation pay she had accrued at the time of her termination by Riverside. The parties agree that vacation pay is a form of deferred compensation. *See also Ind. Heart Assoc. P.C. v. Bahamonde,* 714 N.E.2d 309, 311 (Ind.Ct.App. 1999) (recognizing this Court's precedent "that vacation pay constitutes deferred compensation ...."). Our case law has directly addressed this issue in the past, and its application here is straightforward. The controlling precedent established in *Die & Mold, Inc. v. Western,* 448 N.E.2d 44 (Ind.Ct.App.1983), mandates that Williams' claim for vacation pay must fail.

Die & Mold, Inc. asserted that it had a policy requiring employees to reach their anniversary date each year before they became eligible for vacation benefits. Finding no evidence of any existing policy or any instrument giving employees notice of such a policy, the *Die & Mold* court, analyzing the issue under the Wage Claims Statute, held:

> An agreement to give vacation pay to employees made before they perform their service, and based upon the length of service and time worked is not a gratuity but rather is in the form of

---

8. In addition, we are cognizant that some forms of deferred compensation, for example,

pension plans, may be regulated by state or federal law.

compensation for services. And when the services are rendered, the right to receive the promised compensation is vested, as much as the right to receive wages or other forms of compensation. *Id.* at 46–47. However, the court went on to state: "Here, the evidence and the finding of the court disclose no specific terms or policy. *Had such an agreement or published policy existed it would be enforceable.*" *Id.* at 47–48 (emphasis added).

This is precisely the fact scenario before us today: a published policy, the Handbook, exists, and its terms are enforceable to limit the availability of this deferred compensation. Both parties cite numerous other cases endorsing this analysis. *See Damon Corp. v. Estes,* 750 N.E.2d 891, 893 (Ind.Ct.App.2001) (employee unable to collect accrued vacation pay where employment was terminated prior to anniversary date and company policy provided "an employee does not earn vacation pay each year until his/her anniversary date."); *Ind. Heart Assoc. P.C.,* 714 N.E.2d at 311–12 ("[A]n employee's right to vacation pay under the statute is not absolute. Rather, an employee is entitled to her accrued vacation pay to the time of termination 'provided no agreement or published policy exist[s] to the contrary ....'") (citation omitted), *trans. denied; Osler Inst., Inc. v. Inglert,* 558 N.E.2d 901, 904 (Ind.Ct.App. 1990) ("Unless an agreement or published policy exists to the contrary, when there is an agreement to pay vacation an employee is entitled to a pro rata share of vacation pay to the time of termination."), *aff'd by* 569 N.E.2d 636 (Ind.1991); *Baesler's Super-Valu v. Ind. Comm'r of Labor ex rel. Bender,* 500 N.E.2d 243, 245 (Ind.Ct.App. 1986) ("employee [is] entitled to a *pro rata* share of vacation pay to the time of termination, provided no agreement or published policy existed to the contrary ...").

Riverside's published policy contains two distinct terms that preclude Williams' success on her claim here. First, the Handbook sets forth eligibility requirements for various employee benefits, and none of those requirements permit an employee to begin receiving benefits, including vacation pay, until they have worked for at least ninety days. Having worked only forty-five days before her termination, Williams never met these requirements. In other words, she never rendered the services necessary to have her interest in vacation pay vest. Second, the Handbook provisions regarding vacation pay state that no vacation pay accrued during employment would be paid to any employee upon involuntary termination. Under Indiana law as articulated in the *Die & Mold* line of cases, then, these policies prevent Williams from collecting vacation pay, and her claim must fail. The trial court properly denied Williams' motion for summary judgment and properly granted summary judgment to Riverside on this issue.

### 2. Sick Pay

We next address Williams' claim that she is entitled to any sick pay she had accrued by the time of her termination. Our case law has addressed this issue in two cases. First, in *Shorter v. City of Sullivan,* 701 N.E.2d 890 (Ind.Ct.App. 1998), *reh'g denied, trans. denied,* the appellants-employees argued that accumulated sick pay is deferred compensation to which an employee is entitled when that employee terminates employment. Arguing that sick pay is analogous to vacation pay, the appellants cited *Die & Mold,* 448 N.E.2d 44, and *City of Hammond v. Conley,* 498 N.E.2d 48 (Ind.Ct.App.1986), *overruled on other grounds by Osler,* 569 N.E.2d 636, both of which held that accumulated vacation benefits were a form of deferred compensation that, under certain circumstances, an employee must be compensated for upon termination. However,

the *Shorter* court found that sick pay does not necessarily constitute "wages" under the Wage Claims Statute. The court concluded:

> Appellants argue that sick leave benefits are analogous to vacation benefits. We disagree and are unwilling to extend the reasoning of *Die & Mold* and *Conley* to cases involving accumulated sick pay. There is an obvious difference between accumulated vacation pay and accumulated sick pay. Vacation time can be taken by an employee without any conditions after that benefit is earned. However, an employee may take sick leave only when that employee is ill or meets other conditions. Both of the City's policies are clear that sick leave is payable only when an employee must take time off work for specific reasons. While employees may accumulate sick leave days under the City's policies, they may only use those days for a limited purpose. An employee must be sick or other conditions must be present before an employee has a right to use sick leave. As such, sick leave is not a benefit which automatically vests when earned. *Absent some personnel policy language to the contrary,* employees are not entitled to compensation for sick leave which has been accumulated but not used when the employee terminates employment.

*Shorter,* 701 N.E.2d at 892 (emphasis added).

However, another panel of this Court clarified that sick pay may qualify as "wages" under the Wage Claims Statute. In *Schwartz v. Gary Community School Corp.,* 762 N.E.2d 192 (Ind.Ct.App.2002), *trans. denied,* the Court overturned the trial court's conclusion that sick pay is not a wage and therefore need not be paid to an employee upon termination. The *Schwartz* court focused its inquiry on the method by which sick pay accrued and on the specific policy of the employer in that case. Noting *Die & Mold's* reasoning with respect to the accrual and deferred payment of vacation pay as wages,[9] the *Schwartz* court concluded, "[W]e find no reason in this case to distinguish between the payment of accrued vacation pay, earned over time, and the payment of accrued sick pay, likewise accrued over time." *Schwartz,* 762 N.E.2d at 198–99. However, in limiting their opinion to the policy of the employer then before the court, the *Schwartz* opinion also agrees with the reasoning of *Shorter,* stating:

> The determination whether sick leave benefits are wages should be determined on a case-by-case basis. Here, the employer's policy was to allow the terminating administrative employee to receive $50.00 a day for each unused day of sick time, up to a maximum of 200 days. That policy makes the payment of unused sick time the same as the payment of earned but unused vacation pay. There are circumstances, however, as demonstrated in *Shorter* [ ], where sick leave benefits are not analogous to vacation benefits and cannot be considered as wages. In *Shorter,* the City of Sullivan's policy provided that accumulated sick leave could only be used when an employee was sick or other conditions were present. As those other conditions did not include the termination of em-

---

**9.** Though not specifically addressed in the *Schwartz* opinion, we assume that Gary Community Schools had no policy in place that provided for the forfeiture of sick and/or vacation pay that applied to Schwartz's termination, which the facts indicate was brought about by changes in staffing and administration within the School Board on which Schwartz served. Under *Die & Mold,* if sick pay is regarded as analogous to vacation pay, an existing forfeiture policy would control the disposition of vacation and sick pay.

ployment, the [employees'] accumulated sick leave was not treated as wages. *Id.* at 199 n. 2.

■ In the context of the facts before us, then, we recognize the *Shorter* analysis to be applicable to our case. With regard to sick pay, the language of Riverside's Handbook sets forth several specific situations, besides personal illness, under which an employee may be approved to use sick leave. These situations include "bona fide medical appointments of the employee and the employee's dependents," "prior to or during a medical or personal leave of absence," or, upon exhaustion of accrued vacation time, to care for a dependent or elderly parent. Appellant's App. p. 206. The Handbook contained no other provision allowing for sick pay to be converted or otherwise made available to an employee. Because Riverside's sick pay policy limited its employees' use of the benefit in this manner, the *Shorter* court's analysis applies, and the policy before us cannot properly be characterized as a benefit that automatically vests when earned. Therefore, Williams was not entitled to any accrued sick pay upon termination of her employment, and the trial court properly entered summary judgment for Riverside.

■ Although we find here that the holding in *Shorter* precludes Williams' sick pay claim, we observe that had we agreed with her assertion that sick pay is analogous to vacation pay, our analysis in the previous section under *Die & Mold* would operate to defeat her sick pay claim as well. As in the case of vacation pay, Williams never worked the requisite number of days to entitle her to sick pay under Riverside's sick pay policy. Further, the Handbook's provisions regarding sick pay provide that no accrued sick pay will be paid to any terminated employee, whether voluntarily or involuntarily terminated. Even in cases where sick pay can be re-garded as analogous to vacation pay, then, *see Schwartz*, 762 N.E.2d 192, an employer's policy provisions may act to prevent an employee from collecting sick pay under the reasoning of *Die & Mold.*

As an additional matter, we are compelled to address Williams' argument, persistent throughout her briefs, that remuneration in the form of vacation and sick pay is akin to a contractual agreement for hourly wages. Williams argues that our Supreme Court's decision in *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712 (Ind.1997), supports this argument. *Orr* involved a suit by a group of at-will employees challenging their termination under the employer's policy handbook. The employees asserted a breach of contract claim and argued that their employer could not fire them without first following the disciplinary procedures outlined in the employer's policy manual, which included such measures as oral and written warnings before outright dismissal. The Court found that while employment-at-will is a contractual arrangement, the policy manual was not a part of the employment contract, and therefore the employer was not bound by the policies set forth in the handbook. *Id.* at 720–21; *see also Workman v. United Parcel Serv., Inc.,* 234 F.3d 998 (7th. Cir.2000) (applying the same analysis under similar facts). Williams argues, then, that the inverse must also be true: that employ*ees* are not bound by the policies set forth in their employ*ers*' handbooks. Therefore, according to Williams, she is not bound by the Handbook's stated policies regarding a waiting period for benefits eligibility or the forfeiture of benefits upon involuntary termination.

Williams' arguments on this point are untenable and without support. First, there is no reason to believe that *Orr's* holding that employees cannot enforce the terms of an employment policy against

their employer stands equally for the proposition that an employer cannot enforce the terms of its own employment policies against its employees. Indeed, despite Williams' contention to the contrary, to so hold would eviscerate policy manuals of all meaning and would limit an employer wishing to have any specific enforceable policies to the use of formal contracts to convey those policies to employees.

■ Further, even if we were to extend *Orr* under Williams' reasoning, Williams' claim would still fail here. Williams adamantly and repeatedly points out—correctly—that Riverside's Handbook is not contractual in nature, yet she fails entirely to bridge the gap this exposes, i.e., that she has no contractual agreement that would entitle her to sick or vacation pay benefits in the first place. Williams presents absolutely no evidence that her employment contract with Riverside included any mention of sick or vacation pay. Under her own expansive reading of *Orr*, then, the facts before us still lead to the conclusion that Williams had no right to expect sick or vacation pay pursuant to the terms of her employment contract with Riverside.[10]

■ Because Williams has no contract with Riverside regarding vacation and sick pay, she is confined to the terms of Riverside's employment policies in seeking these benefits. In that regard, Williams' proposed reading of *Orr* is troubling for yet another reason. It is well-established that "[i]n Indiana, a party may not accept bene-

fits under an agreement or instrument and at the same time repudiate its obligations." *In re Marriage of Arvin,* 689 N.E.2d 1270, 1273 (Ind.Ct.App.1997) (citing *In re Estate of Palamara,* 513 N.E.2d 1223, 1229 (Ind. Ct.App.1987), *reh'g denied* ), *trans. denied;* *see also Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 283 (Ind.1983). Williams argues that she is entitled to compensation for vacation and sick pay because the Handbook, which she points out limits her rights to receive these benefits, is unenforceable. However, the vacation and sick pay benefits Williams claims arise only by virtue of the Handbook; if, as Williams resolutely contends, the Handbook is unenforceable by either party here, then she had no legal claim to vacation and sick pay in the first place. Inasmuch as employees had a right to earn vacation and sick pay *pursuant to the employer's policies as set forth in the Handbook,* that right was limited in whatever manner likewise set forth therein.

## II. Summary Judgment on Riverside's Counterclaim

■ Williams next challenges the grant of summary judgment on Riverside's counterclaim. Riverside's counterclaim alleged that Williams suit was "utterly frivolous and without merit" and that its maintenance following the parties' correspondence was "frivolous and in bad faith." Appellant's App. p. 255. As is clear from our opinion above, we disagree. Most notably, we found for Williams on

---

10. We assume that Williams' argument is meant to imply that because vacation pay—and, for the sake of argument, sick pay—are wages, they are *per se* a matter of contract. Williams cites *St. Vincent Hospital,* 766 N.E.2d at 704, for the proposition that "an employee's wage is a mutual decision . . . ." Appellant's Reply Br. p. 6. However, a reading of *St. Vincent Hospital* leaves no doubt that the Court's reference to "wages" was

limited to hourly or salaried pay under the minimum wage statutes and the frequency and amount of those wages due employees on a bi-weekly or semi-monthly basis. The opinion in *St. Vincent Hospital* did not consider any other categories of "wages"—i.e., sick pay, vacation pay, or other benefits—and we are not persuaded that *St. Vincent Hospital* was intended to address deferred compensation.

her claim regarding the reduction of her hourly wage rate for her final pay period. Further, though she was unable to prevail on her claim for vacation and sick pay, Williams' argument on that issue implored this Court to extend the ruling of *Orr* and apply it to the facts of her case. Such a request evidences the legitimate nature of Williams' complaint. *See, e.g., Gaddis v. McCullough,* 827 N.E.2d 66, 75 (Ind.Ct. App.2005) ("[A] claim or defense [is] frivolous ... if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law.") (alterations in original), *trans. denied.* While we found Williams' argument regarding *Orr* to be unpersuasive, it was not frivolous or in bad faith. The trial court erred in granting summary judgment on Riverside's counterclaim; we hereby reverse that ruling and instruct the trial court to enter summary judgment on the issue in favor of Williams.

### III.   Williams' Motion to Strike

As Williams' motion to strike the testimony of her deposition concerned only those portions of her deposition that were used by Riverside to support its cross-motion for summary judgment, and as we have reversed the trial court's ruling in favor of Riverside and found in favor of summary judgment for Williams on that cross-motion, Williams' motion to strike is moot. We decline, then, to reach the merits of this issue.

### Conclusion

We agree with the trial court's grant of summary judgment to Riverside on the issues of vacation and sick pay. However, we find Williams' argument regarding the nature of hourly wages to be persuasive, and we therefore reverse the trial court's grant of summary judgment on that issue and instruct the court to enter summary

judgment for Williams. For that reason, we also reverse the trial court's decision granting summary judgment on Riverside's frivolous action claim and direct the court to enter summary judgment for Williams accordingly. Finally, because Williams is entitled to summary judgment on Riverside's frivolous action claim, we find her motion to strike to be moot.

Affirmed in part, reversed in part, and remanded.

ROBB, J., and MATHIAS, J., concur.