Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 13 2015, 10:06 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RONALD E. WELDY**
Weldy & Associates
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**KEVIN D. KOONS**
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL A. PATTON,                          )
                                            )
    Appellant-Plaintiff,                )
                                            )
       vs.                           )   No.  49A05-1402-PL-59
                                            )
STARDUST TRANSPORTATION, LLC,               )
                                            )
    Appellee-Defendant.                 )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
Cause No. 49D14-0908-PL-38324

**January 13, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Michael Patton appeals the trial court's judgment denying his claim for unpaid wages against Stardust Transportation, LLC ("Stardust").  On appeal, Patton has raised several issues for our review, which we have consolidated and restated as: 1) whether the trial court's findings and judgment are clearly erroneous; and 2) whether the trial court abused its discretion in excluding evidence of Patton's vacation wage claim.  Stardust cross-appeals, raising two issues for our review, which we have consolidated and restated as whether the trial court abused its discretion in denying Stardust's motion to amend its answer to include a breach of contract counterclaim.  Concluding that Stardust did not make unlawful deductions from Patton's wages and that the trial court did not abuse its discretion in excluding evidence of his vacation pay, we affirm the judgment for Stardust and against Patton on Patton's claims.  However, concluding that Stardust's counterclaim was compulsory and the trial court abused its discretion in denying Stardust's motion to amend its answer, we reverse and remand for further proceedings.

## Facts and Procedural History

Stardust, an Indiana trucking company, employs truck drivers to haul fuel.  Patton began working for Stardust as a truck driver in June 2008.  Stardust truck drivers are paid on a weekly basis, and after successfully completing a ninety day probationary period, they are generally eligible for vacation pay. Employees who start in June accrue three days of vacation pay the first year and, pursuant to Stardust policy, are entitled to payment for any unused vacation time once employment ends.  Patton did not use any vacation time while employed by Stardust.

Stardust truck drivers were paid by load, which were assigned by a company dispatcher each day. As part of the payroll process, Patton was required to give the company controller his bills of lading and other paperwork each week, which provided the controller with the information necessary for issuing a paycheck in the correct amount. Patton failed to timely submit his payroll paperwork on three occasions.

Although submitting the paperwork to Stardust was necessary for verifying, documenting, and calculating payroll, the Stardust controller accommodated Patton by making advance payments for an "estimated amount of wages" the three times Patton failed to timely submit his paperwork. Appendix of Appellant at 10-11. Because these payments to Patton were made in advance, the controller had to reconcile Patton's subsequent paychecks—by debiting the amount of the advance payment—once the paperwork was finally processed.

The controller made an advance payment of $600 to Patton on September 19, 2008. The following week, the controller processed the payroll for both weeks and accounted for the advance payment by debiting the $600 from Patton's paycheck. A few months later, Patton failed to timely submit his paperwork a second time; the controller made another advance payment to Patton in the amount of $1,000 on December 19, 2008. The following week on December 26, 2008, the controller processed the payroll for both weeks and reconciled Patton's paycheck by debiting $500—half of the advance payment. The remaining half of the December 19, 2008 advance payment was accounted for when the controller debited $500 from Patton's paycheck on January 23, 2009. Patton failed to timely submit his paperwork a third time, and on January 16, 2009, Stardust made an

advance payment to Patton in the amount of $500. Patton's paycheck did not reflect the January 16, 2009 advance payment until $500 was debited on February 6, 2009, the day he received his last paycheck. At some point, an employee from Stardust informed Patton that the debits to two of his paychecks were made due to a personal loan.

Patton stopped hauling loads for Stardust in February 2009 due to a medical condition, and it was disputed at trial whether Patton was an employee on medical leave or involuntarily separated from employment at the time he filed his original complaint in March 2009. Regardless, Patton was informed he no longer had a position with Stardust in late summer of 2009. He was never paid for the three days of vacation time he had accrued.

During Patton's employment, Stardust also made a personal loan to Patton in the amount of $1,500; this loan was made on November 21, 2008, during a two-week period when Patton did not have work. The loan was based on a verbal agreement between Patton and the Stardust President, whereby Patton agreed to repay the loan upon receiving his 2009 tax refund.

Patton sued Stardust in small claims court, disputing the debits made to his paychecks on January 23, 2009 and February 6, 2009. On appeal from the decision against him by the small claims court, Patton filed a complaint with the trial court on August 13, 2009. Stardust filed its answer on October 16, 2009. On February 22, 2012, Stardust filed a motion for leave to file an amended answer and counterclaim, alleging that Patton breached his contract by failing to repay Stardust $1,500 for the November 21, 2008, personal loan. The court denied the motion because Stardust had not complied with a local

4

rule requiring it to indicate whether Patton intended to object. On March 5, 2012, Stardust

filed an amended motion. The trial court did not rule on the renewed motion until it was

denied the day of trial, December 2, 2013. Final judgment was entered for Stardust on

Patton's claims on December 17, 2013. After the trial court denied Patton's motion to

correct error, Patton appealed.

## Discussion and Decision

### I. Standard of Review

[T]he trial court entered findings of fact and conclusions thereon sua sponte. Sua sponte findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. First, we must determine whether the evidence supports the trial court's findings of fact. Second, we must determine whether those findings of fact support the trial court's conclusions of law. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment.

Findings will only be set aside if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.

Indiana Bureau of Motor Vehicles v. McNeil, 931 N.E.2d 897, 900-01 (Ind. Ct. App. 2010)

(citations omitted), trans. denied.

### II. Patton's Appeal

### A. Indiana's Wage Statutes

Public policy in this state favors the prompt payment of wages owed to employees. E & L Rental Equip., Inc. v. Bresland, 782 N.E.2d 1068, 1071 (Ind. Ct. App. 2003). Wages come in the form of present compensation and deferred compensation. See Williams v. Riverside Cmty. Corr. Corp., 846 N.E.2d 738, 743-44 (Ind. Ct. App. 2006), trans. denied. Wages earned for performing labor constitute present compensation, and they indefeasibly vest in an employee immediately upon the performance of labor for the employer. Id. at 744. An employee has an immediate and absolute right to these vested wages. Id. "Deferred compensation, on the other hand, only vests upon the performance of some requirement in addition to—or even apart from—the performance of labor. . . ." Id. (quotations omitted). To the extent unused vacation time is to be compensated, it is deferred compensation. Naugle v. Beech Grove City Schs., 864 N.E.2d 1058, 1067 (Ind. 2007).

A Hoosier's entitlement to compensation is guaranteed by Indiana's wage payment statute (Ind. Code ch. 22-2-5) and Indiana's wage claim statute (Ind. Code ch. 22-2-9), both of which address wage disputes but which set forth two different procedural frameworks applying to different categories of claimants. St. Vincent Hosp. & Health Care Ctr. v. Steele, 766 N.E.2d 699, 704-05 (Ind. 2002). The wage payment statute applies to current employees and former employees who left employment voluntarily:

> Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.

6

Ind. Code § 22-2-5-1(a). When an employer fails to pay an employee the amount due, the employee may make a claim for unpaid wages and recover damages directly in the trial court pursuant to Indiana Code section 22-2-5-2 (allowing recovery of liquidated damages in the amount of 10% of wages due for each day the amount due remains unpaid). See also E & L Rental Equip., Inc., 782 N.E.2d at 1070.

In contrast, the wage claim statute applies to former employees who left employment involuntarily:

> Whenever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred . . . .

Ind. Code § 22-2-9-2(a). When an employer fails to pay a former employee the amount due, that employee has the same claim for unpaid wages and damages as above, see Ind. Code § 22-2-9-4(b), but must first submit his or her claim to the Indiana Department of Labor. Ind. Code § 22-2-9-4(a); see also E & L Rental Equip., Inc., 782 N.E.2d at 1070.

## B. Patton's Wage Claims

Patton claims the trial court's judgment that he is not entitled to relief under the wage statutes is clearly erroneous because the January 23, 2009 and February 6, 2009 debits to his paychecks were for repayment of a loan, which were deductions in violation of Indiana Code chapter 22-2-6 (the "wage deduction statute"). Thus, he argues he was not paid the amount owed to him and he is entitled to recover damages. Indiana Code section 22-2-6-1 states:

Any direction given by an employee to an employer to make a deduction <u>from the wages to be earned</u> by said employee, after said direction is given, shall constitute an assignment of the wages of said employee.

Ind. Code § 22-2-6-1(a) (emphasis added). Indiana Code section 22-2-6-2 authorizes an employer to deduct an assignment of wages from an employee's paycheck only when certain criteria are met. In relevant part, it states:

> (a) Any assignment of the wages of an employee is valid only if all of the following conditions are satisfied:
>     (1) The assignment is:
>         (A) in writing;
>         (B) signed by the employee personally;
>         (C) by its terms revocable at any time by the employee upon written notice to the employer; and
>         (D) agreed to in writing by the employer.
>     (2) An executed copy of the assignment is delivered to the employer . . .
>     (3) The assignment is made for a purpose described in subsection (b).
> (b) A wage assignment under this section may be made for the purpose of paying any of the following:
>     \*\*\*
>     (7) Amount of a loan made to the employee by the employer and evidenced by a written instrument executed by the employee . . . .

Ind. Code § 22-2-6-2. If the provisions of this statute are not followed, there is no valid assignment of wages and any deduction from the employee's wages is improper. <u>See</u> <u>E & L Rental Equip., Inc.</u>, 782 N.E.2d at 1071. Because Patton believes the debits to his paychecks were for a loan that did not meet the requirements of section 22-2-6-2(a), he claims they were unlawful deductions.

## 1. Patton's Employment Status

As a threshold matter, we address Stardust's argument that Patton was involuntarily separated from employment on the date he filed his complaint, and therefore, according to

8

Stardust, Patton was required to submit his claims to the Indiana Department of Labor before he could file his complaint in the trial court. It is true that Patton did not first file a wage complaint with the Indiana Department of Labor. Accordingly, if Patton had been involuntarily separated from working for Stardust on the date he filed his complaint, then Patton's claim would fail for failure to exhaust administrative remedies as required by the wage claims statute. See Walczak v. Labor Works-Ft. Wayne LLC, 983 N.E.2d 1146, 1154 (Ind. 2013).

Our supreme court addressed the issue of what "separated from the payroll" means in Walczak, holding that an employee "is not separated from the pay-roll for the purpose of the Wage Claims Act unless that employee has no immediate expectation of possible future employment with the same employer." Id. at 1155 (quotation marks omitted). Thus, the success of Stardust's argument depends on whether Patton had an immediate expectation of future employment with Stardust when he filed his complaint in March 2009.

In its answer, Stardust admitted that Patton "temporarily ceased working" for Stardust due to a medical condition in early February 2009. Appendix of App. at 27. If Patton had been separated from employment involuntarily at the time, Stardust would have had no occasion to make this admission. Moreover, Stardust did not inform Patton that he no longer had a position with the company until the latter half of 2009 when Patton was released from knee surgery. Stardust made this same argument at trial in a motion for judgment on the evidence, which the trial court denied. The record supports the trial court's ruling that Patton was not involuntarily separated from Stardust's payroll when he filed his

9

complaint in March 2009. Accordingly, Patton's claims were properly raised and addressed by the trial court under the wage payment statute.

## 2. Stardust's Admission

Stardust's answer admitted to the allegation in Patton's complaint that it "informed Plaintiff that the [deductions] [were] taken due to a personal loan provided by Defendant to Plaintiff." Appendix of App. at 21. Patton argues this admission is conclusive and dispositive as to the question of whether the wage deduction statute applies. We disagree.

"A judicial admission . . . is an admission in a current pleading or made during the course of trial; it is conclusive upon the party making it and relieves the opposing party of the duty to present evidence on that issue." Weinberger v. Boyer, 956 N.E.2d 1095, 1105 (Ind. Ct. App. 2011), trans. denied. "Statements contained in a party's pleadings may be taken as true as against the party without further controversy or proof." Lutz v. Erie Ins. Exchange, 848 N.E.2d 675, 678 (Ind. 2006). "Opposing parties prepare their case on the assumption that facts admitted by other parties require no proof. [And] [f]or this scheme to work properly, parties must be entitled to rely on trial courts to treat admissions in pleadings as binding on the party making the admission." Id. "Admissions are to be considered and weighed precisely as other evidence in the case by the trier of fact. An admission's weight depends on its character, the circumstances under which it was made, and the effect of such circumstances is to be determined by the trier of fact." Weinberger, 956 N.E.2d at 1105.

Stardust admitted that it "informed Mr. Patton" that the debits to his paychecks were made due to a personal loan. Although this admission was binding, it is not dispositive of

10

whether Stardust made an unlawful assignment of wages. Stardust admitted only that it had <u>informed</u> Patton of the reason for the debit; Stardust <u>did not admit</u> that it made the debit as a wage assignment for payment of a personal loan.

The trial court had the chance to weigh the evidence and judge the witness's credibility. It found that Patton did not remember the existence of a November 2008 personal loan, and therefore, he would not have understood the Stardust employee's reference to a personal loan. It also found evidence that Stardust's controller tracked: the work Patton performed, the dates Patton worked, the wages Patton earned, and the advance payments Patton received. The trial court heard the controller testify that it was a common practice for Stardust employees to refer to estimated wages as a "loan." Appendix of App. at 13. Based on these facts, the trial court concluded that "personal loan" as used in Stardust's answer referred to the advance payments. The trial court did not err in treating the admission as it did. [1]

### 3. Advance Payments

The trial court found the wage deduction statute was not applicable, and therefore, Patton was not entitled to damages under the wage payment statute. Specifically, the court

---

[1] Patton also argues the trial court erred in interpreting Stardust's stipulation that it "informed Mr. Patton that the [deductions] [were] taken due to a personal loan provided by Stardust to Mr. Patton." Appendix of App. at 31. A stipulation is an agreement between two lawyers, whereby certain designated facts are admitted. <u>Anacomp, Inc. v. Wright</u>, 449 N.E.2d 610, 615 (Ind. Ct. App. 1983). Parties may not agree to the legal effect of such factual stipulations nor will they be construed to admit facts which are obviously meant to be contested by the parties. <u>Id.</u>

Given that the law suit is centered on whether Stardust violated the wage deduction statute by deducting wages from Patton's paychecks for a personal loan, Stardust's stipulation cannot be construed to admit those facts. <u>See</u> <u>id.</u>

found that the reconciliation of Patton's paychecks was not a "deduction from [his] wages to be earned" as contemplated by the statute. Appendix of App. at 16. We agree.

Stardust made advance payments to Patton for labor he had performed even though he did not submit his paperwork on time. These payments were made in lieu of Patton not receiving a paycheck and were an estimation of his vested wages. Once Patton was paid for the labor he performed, his right to those wages divested. Accordingly, the debits to Patton's subsequent paychecks were not deductions from wages owed—they were adjustments for wages that had already been paid.

In E & L Rental Equip., Inc., we affirmed the trial court's judgment in favor of the employee because the employer had unlawfully deducted wages from the employee's paycheck to pay for property the employee had damaged. 782 N.E.2d at 1069. There, the employer deducted from the employee's paycheck wages that were owed to the employee. Id. at 1071. Here, the facts are different. Unlike the employer in E & L Rental Equip., Inc., Stardust did not deduct wages owed to Patton. Because the amounts debited to Patton's subsequent paychecks had already been paid and were not wages owed, the wage deduction statute is not applicable. Cf. Design Indus., Inc. v. Cassano, 776 N.E.2d 398, 404 (Ind. Ct. App. 2002) (holding that severance payments were not "wages" under the wage deduction statute because they were not compensation earned for work performed). Because Stardust paid Patton's wages in advance of processing the paperwork, Patton had no legal right to the amount debited to his subsequent paychecks. The trial court's judgment was not clearly erroneous.

## C. Patton's Vacation Wage Claim

The trial court excluded evidence of Patton's vacation wage claim because his complaint did not give Stardust notice of such a claim. Patton challenges this ruling, arguing that his complaint complied with Indiana's notice pleading requirements in asserting this claim.

The exclusion of evidence falls within the sound discretion of the trial court, and we review it for an abuse of discretion. Reed v. Bethel, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. To determine whether the trial court abused its discretion, we must determine whether Stardust had notice of the claim. Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain, 446 N.E.2d 626, 629 (Ind. Ct. App. 1983). "To state a claim for relief . . . a pleading must contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for relief to which the pleader deems entitled. . . ." Ind. Trial Rule 8(A).

> Under Indiana's notice pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case. [These] rules do not require the complaint to state all elements of a cause of action. Notice pleading merely requires pleading the operative facts so as to place the defendant on notice as to the evidence to be presented at trial. Therefore, under notice pleading the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it. A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues.

ARC Const. Mgmt., LLC v. Zelenak, 962 N.E.2d 692, 697 (Ind. Ct. App. 2012) (quotation marks and citations omitted).

Patton admits that the reason he "did not articulate a vacation wage claim" is because it was "discovered during the course of litigation." Brief of Appellant at 11. Because "vacation pay is a form of deferred compensation," Williams, 846 N.E.2d at 747, Patton was not entitled to his accrued vacation pay until his employment with Stardust ended, see Naugle, 864 N.E.2d at 1067 ("The time of payment of vacation pay is usually deferred because the accrual of vacation is unknown until termination of the employment. Absent an agreement to the contrary, an employee is not entitled to accrued vacation pay until termination."). As discussed above, Patton was still an employee in March 2009 and would have had no reason to bring a vacation claim in his original complaint. Accordingly, the trial court did not abuse its discretion in excluding evidence of the vacation wage claim.[2]

### III. Stardust's Cross-Appeal

Stardust cross-appeals, arguing the trial court abused its discretion in denying Stardust's motion to amend its answer to include a counterclaim for breach of contract. "[I]f the pleading is one to which no responsive pleading is permitted, and the action has not been placed upon the trial calendar, [a party] may so amend it at any time within thirty [30] days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." Ind. Trial Rule 15(A).

> Although amendments to pleadings are to be liberally allowed, the trial court retains broad discretion in granting or denying amendments to pleadings. We

___

[2] Although Patton's vacation wage claim was not ripe at the time his original complaint was filed, we make no comment about its continued viability or its merit.

will reverse only upon a showing of an abuse of that discretion. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. We consider whether a trial court's ruling on a motion to amend is an abuse of discretion by evaluating a number of factors, including undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment.

Hilliard v. Jacobs, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010) (quotation marks and citations omitted), trans. denied. "When [an] omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases . . . ." Crider v. State Exch. Bank of Culver, 487 N.E.2d 1345, 1349 (Ind. Ct. App. 1986) (quotation omitted), trans. denied.

A compulsory counterclaim is "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim . . . ." Ind. Trial Rule 13(A).

The phrase "transaction or occurrence" should be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events. Two causes of action arise from the same transaction or occurrence when there is a logical relationship between them, that is, when the counterclaim arises from the same aggregate set of operative facts as the opposing party's claim.

Hilliard, 927 N.E.2d at 401 (citation omitted). "[T]he goal of judicial economy provides guidance in the application of the logical relationship test; the particular facts underlying the parties' respective claims provide the requisite context for the application of the test." Broadhurst v. Moenning, 633 N.E.2d 326, 331 (Ind. Ct. App. 1994).

15

Many of the particular facts underlying Patton's complaint were necessary for Stardust's breach of contract claim; these facts were litigated at trial. Paragraphs 11, 12, and 13 of Patton's complaint specified the amount Stardust paid Patton between the week of November 14, 2008 and November 28, 2008. Appendix of App. at 21. At trial, Patton claimed that he was guaranteed $600 a week, and the evidence at trial showed he neither worked nor received a paycheck those two weeks. This is the same period of time the alleged $1,500 loan was made, and all of these transactions are reflected on a spreadsheet titled "summary of Patton's wages." Defendant's Exhibit 4. These circumstances bolster Stardust's claim that a personal loan—by verbal agreement—was made on November 21, 2008. Indeed, if the shoe was on the other foot and Stardust had sued Patton for breach of contract, Patton would have been compelled to raise as an affirmative defense—or risk waiver of—a claim that the amount owed to Stardust had already been taken from his paychecks in violation of the wage deduction statute.

The trial court made findings of fact and conclusions regarding the same loan which formed the basis of Stardust's proposed counterclaim. On these facts, Stardust's claim would likely be barred in a subsequent suit. See Broadhurst, 633 N.E.2d at 332 (affirming summary judgment favorable to defendant because plaintiff's claims were barred in subsequent suit where trial court made findings of fact and conclusions thereon in first suit regarding same contracts which formed basis of second suit). Because there is a logical relationship between Patton's wage claims and Stardust's breach of contract counterclaim, the counterclaim was compulsory.

16

Although Stardust sought to amend its answer to add a counterclaim for breach of contract nearly three years after the original complaint was filed, it is also true that the motion to amend was made nearly two years before the bench trial. The bench trial was also scheduled four months ahead of time. Even if this could be seen as undue delay, we note that undue delay alone is insufficient to deny leave to amend. Selvia v. Reitmeyer, 156 Ind. App. 203, 295 N.E.2d 869, 872 (1973).

Knowing the court had not yet ruled on its renewed motion to amend, Stardust should have exercised more diligence in getting the court to rule on the motion. The trial court should have exercised more diligence, too. Regardless, Patton had sufficient notice of Stardust's motion to amend its answer, and the personal loan was made an issue at trial. Denying Stardust's motion to amend its answer to include a compulsory counterclaim— one that would be lost if not made—caused more prejudice to Stardust than allowing it would have caused Patton.

Furthermore, the record is void of any evidence of bad faith. And allowing Stardust's counterclaim would not have been futile: the trial court's findings show that the breach of contract claim would have likely been successful. Because the factors stated in Hilliard weigh in favor of Stardust's motion to amend, it was clearly against the logic and effect of the facts and circumstances of this case for the trial court to deny it. See Hilliard, 927 N.E.2d at 398. The trial court abused its discretion in denying Stardust's motion to amend.[3]

---

[3] In reaching this holding, we do not address the merits of Stardust's counterclaim. We also note that Stardust's cross-appeal alleges the trial court erred in not entering judgment in its favor on the counterclaim. However, due to the denial of Stardust's motion to amend, there was no counterclaim before the trial court.

<u>Conclusion</u>

We conclude that the trial court neither erred in its interpretation of Stardust's admission nor did it err in finding the wage deduction statute inapplicable to Stardust's practice of reconciling Patton's advance payments. We also conclude that the trial court did not abuse its discretion in excluding evidence of Patton's vacation wage claim. The trial court did, however, abuse its discretion in denying Stardust's motion to amend its answer to include a compulsory counterclaim. Thus, we affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and KIRSCH, J., concur.