ATTORNEYS FOR APPELLANT
Philip J. Gibbons, Jr.
Andrew G. Jones
Indianapolis, Indiana

ATTORNEYS FOR AMICUS
CURIAE THE STATE OF INDIANA
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Heather Hagan McVeigh
Deputy Attorney General
Indianapolis, Indiana

Rick J. Ruble
Deputy Commissioner of Labor
& General Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Michael T. Yates
Ryan S. Ross
Fort Wayne, Indiana

F. Larkin Fore
Louisville, Kentucky



FILED

Mar 13 2013, 11:59 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 02S04-1208-PL-497

BRANDY L. WALCZAK, INDIVIDUALLY AND
ON BEHALF OF THOSE SIMILARLY SITUATED,

*Appellant (Plaintiff below),*

v.

LABOR WORKS – FORT WAYNE LLC, D/B/A
LABOR WORKS,

*Appellee (Defendant below).*

Appeal from the Allen County Superior Court, No. 02D01-1002-PL-31
The Honorable Stanley A. Levine, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 02A04-1109-PL-509

**March 13, 2013**

**Massa, Justice.**

James Whitcomb Riley (1849–1916), our celebrated "Hoosier Poet," is widely credited with the origination of the Duck Test; as he expressed it, "[w]hen I see a bird that walks like a duck and swims like a duck and quacks like a duck, I call that bird a duck."[1] Brandy Walczak successfully applied for employment at Labor Works, received job assignments and paychecks, and was never fired or laid off. Nevertheless, when she filed a class action lawsuit against Labor Works under the Indiana Wage *Payment* Act, Labor Works argued that day laborers like Walczak are involuntarily separated from the payroll at the end of every shift and thus required to proceed under the Wage *Claims* Act. Because we conclude Walczak had a reasonable expectation of continuing to receive job assignments from Labor Works on the day she filed her claim—in short, that Walczak passes the Duck Test—we hold she was not separated from the payroll for the purpose of the Wage Claims Act and may proceed with her claim as she filed it, under the Wage Payment Act.

---

[1] Michael Heim, EXPLORING INDIANA HIGHWAYS: TRIP TRIVIA 68 (2007). Others attribute the Duck Test to labor leader and noted anti-Communist James B. Carey. See THE YALE BOOK OF QUOTATIONS 131 (Fred R. Shapiro, ed., 2006) (quoting Carey as saying, in the September 3, 1948 New York Times, "A door-opener for the Communist party is worse than a member of the Communist party. When someone walks like a duck, swims like a duck, and quacks like a duck, he's a duck.").

All questions of origination aside, the Duck Test is a classic example of Hoosier pragmatism, and it enjoys wide judicial acceptance. See, e.g., Lake v. Neal, 585 F.3d 1059, 1059 (7th Cir. 2009) ("Joseph Lake, the plaintiff in this suit, flunks the *Duck Test*. He says, in effect, that if it walks like a duck, swims like a duck, and quacks like a duck, it sure as heck isn't a duck." (emphasis in original)).

**Facts and Procedural History**

### A. Statutory Background

In 1933, the Indiana General Assembly enacted the Wage Payment Act, which required all Indiana employers to "pay each employee . . . at least twice each month . . . all wages earned to a date not more than ten days prior to the date of such payment." 1933 Ind. Acts ch. 47, § 1. The statute applied to current employees as well as to employees who, either "permanently or temporarily," "voluntarily leave [their] employment." Id. Violations of the statute were punishable by liquidated damages, and employees who brought lawsuits to vindicate their claims could recover attorney's fees. Id. at § 2. Although it has been subject to minor amendments, the Wage Payment Act exists in substantially this same form today. See Ind. Code § 22-2-5-1 et seq. (2007).[2]

Six years later, the General Assembly created a similar remedy for employees who had been "separate[d] . . . from the pay roll" or whose work had been "suspen[ded] . . . as the result of an industrial dispute." 1939 Ind. Acts ch. 95, § 2. The Wage Claims Act required all Indiana employers to remit all unpaid wages to the former employee "within twenty-four hours of the time of separation," or, "[i]n the event of the suspension of work, as the result of an industrial dispute," "at the next regular pay day." Id. Unlike the Wage Payment Act, however, the Wage Claims Act did not create a private right of action; rather, it created an administrative process. It imposed a duty upon the Commissioner of the Department of Labor "to enforce and to insure compliance with the provisions of this act, to investigate any violations of any of the provisions of this act, and to institute or cause to be instituted actions for penalties and forfeitures provided hereunder." Id. at § 4. It also "authorized" the Commissioner "to take assignments of wage

---

[2] See also P.L. 350-1971, § 1, 1971 Ind. Acts 1352; P.L. 144-1986, § 8–9, 1986 Ind. Acts 1267–68; P.L. 143-1988, § 1, 1988 Ind. Acts 1805; P.L. 216-1989, § 2, 1989 Ind. Acts 1598; P.L. 8-1993, § 273–74, 1993 Ind. Acts 1942–43; P.L. 51-2007, §§ 1–4, 2007 Ind. Acts 1235–36; P.L. 220-2011, § 360, 2011 Ind. Acts 3094.

claims of less than one hundred dollars" and empowered him "to prosecute actions for the collection of such claims of persons . . . who, in his judgment, have claims which are valid and enforceable in the courts." Id. at § 5. Like the Wage Payment Act, the Wage Claims Act has been amended several times since its enactment, but these amendments have been largely cosmetic. See Ind. Code § 22-2-9-1 et seq. (2007).[3]

So to summarize in shorthand, it fairly can be said that the Wage Payment Act applies to, among others, those who keep or quit their jobs, while the Wage Claims Act applies to those who are fired, laid off, or on strike. J Squared, Inc. v. Herndon, 822 N.E.2d 633, 640 n.4 (Ind. Ct. App. 2005).

## B. Labor Works and Brandy Walczak's Claim

Labor Works is a day labor service that maintains an office in Fort Wayne, Indiana. Its day labor employees are not required to report to work on any regular schedule. Rather, they receive job assignments on a day-to-day basis by coming into the Labor Works office and signing up to work. Assignments are not guaranteed, and if there is not enough available work, an employee may not receive an assignment even if she signed up for one.

Labor Works hired Brandy Walczak to work as a day labor employee on December 20, 2009. Walczak worked on various jobs as she was assigned to them, including packaging at a potato chip factory and general labor at a refractory contractor, a hospital laundry, and a hotel. She was paid by check at the end of each work day. Labor Works took deductions from Walczak's gross pay for taxes, Social Security and Medicare, and any transportation and equipment that she used. Walczak worked on January 27, 2010, but did not sign up for work on January 28. On January 29, she signed up but did not receive a job assignment. Walczak did not

---

[3] See also 1965 Ind. Acts ch. 68, § 1; 1969 Ind. Acts ch. 62, § 1; P.L. 351-1971, § 1, 1971 Ind. Acts 1353; P.L. 127-1984, § 1, 1984 Ind. Acts 1116; P.L. 144-1986, §§ 13–16, 1986 Ind. Acts 1268–69; P.L. 8-1993, § 276, 1993 Ind. Acts 1943; P.L. 165-2007, § 2–3, 2007 Ind. Acts 2443–44; P.L. 220-2011, § 361, 2011 Ind. Acts 3095.

4

work another job for Labor Works until February 2, when she signed up and received a job assignment. She continued periodically to accept job assignments from Labor Works until early March 2010.

Meanwhile, on February 1, 2010—a day when she neither sought nor obtained a work assignment—Walczak filed a class action lawsuit under the Wage Payment Act against Labor Works seeking to recover unpaid wages. About nine months later, Labor Works moved for summary judgment, arguing Walczak's claim properly arose under the Wage Claims Act because she was "separated from the pay-roll" within the meaning of Indiana Code § 22-2-9-2 at the time her complaint was filed. Thus, Labor Works contended, the trial court lacked jurisdiction to hear her claim; rather, she was required first to submit it to the Department of Labor. Walczak demurred, arguing the Wage Claims Act did not apply to her because she was never "fired."

Labor Works submitted several affidavits in support of its motion. One, executed by Fort Wayne Branch Manager Carolyn Burton, describes the Labor Works employment and job assignment process in pertinent part as follows:

> When a person who signs in for work is hired, he/she is hired to work for that day only. If the person seeking work with Labor Works comes back the next day seeking to be hired, that person may be hired to work doing the same or a different job, the person may be hired to work at a different client site altogether, or the person may not be hired at all depending on numerous factors, including without limitation the number of persons signing up for work at the Labor Works office, the number and type of assignments available that day, the requirements of the job (e.g. some jobs require certain skills or experience), and how the person performed on earlier assignments, to name some factors.

App. at 172. Nine other Labor Works employees executed affidavits reiterating Ms. Burton's description of the employment relationship:

> At the end of each day I work, I am paid by Labor Works for that day's services. If I want to return the next day, I again have to go through the sign-up process and there is no guarantee that I will receive an assignment . . . At the end of each work day, I know I no longer have a job and I know I have no obligation to show up for work the next day. I understand my employment is for one day and that is it.

5

App. at 186–203.  In response, Walczak submitted excerpts from Ms. Burton's deposition and various Labor Works employment documents, including a "Temporary Employee Application."[4] App. at 114.  On the application, Labor Works refers to itself as "Employer" and includes a "Certification and Agreement" that provides in pertinent part:

> I understand that if I become an employee of Employer's, only I, or Employer can terminate my employment.  When my assignment ends, I must report to my Employer's office for my next job assignment.  Failure to accept my next job assignment will indicate that I have refused available work.  Failure to report to Employer's office and sign in early on the next working day following last completed job assignment, may affect my rights to any future unemployment claims.

App. at 123.  On a document entitled "Employer Work Rules," Labor Works warns employees that if they leave a job assignment early, "[their] services may no longer be needed."  App. at 126.  Ms. Burton testified that in order to be eligible to go out on an assignment, Labor Works employees must pass a breath alcohol test, and an employee who fails the test three days in a row "would not be eligible to accept assignments."  App. at 117.

The trial court agreed with Labor Works and granted its motion.  Walczak appealed, and the Court of Appeals reversed.  Walczak v. Labor Works – Fort Wayne, LLC, 966 N.E.2d 642, 643 (Ind. Ct. App. 2012).  Citing Johnson v. Celebration Fireworks, Inc., 829 N.E.2d 979 (Ind. 2005), the court held that "[t]he determination of whether, when she filed her complaint in the instant action, Walczak was separated from the payroll by Labor Works within the meaning of the Wage Claims [Act] is a question of fact."  Walczack, 966 N.E.2d at 647.  That question, the court said, "is precisely the type of fact-sensitive inquiry that should be resolved in the first instance by the administrative agency"—meaning, in this case, the Department of Labor.  Id. at 647.  Accordingly, it remanded the case to the trial court "with instructions to dismiss Walczak's complaint."  Id. at 648.

---

[4] Ms. Burton described this document as a "preemployment application."  App. at 114.

We granted transfer, thereby vacating the opinion below.  Walczak v. Labor Works –
Fort Wayne, LLC, 974 N.E.2d 475 (Ind. 2012) (table); Ind. Appellate Rule 58(A).

**Standard of Review**

It is well-established that we review a trial court's grant of summary judgment de novo.
Freidline v. Shelby Ins. Co., 774 N.E.2d 37, 39 (Ind. 2002).  Although Labor Works styled its
motion as one for summary judgment, that style does not match the substance of Labor Works's
argument.  As in other aspects of this case, it is the substance rather than the style that must
control.

Labor Works asserted it was "entitled to summary judgment as a matter of law based on
lack of subject matter jurisdiction."  App. at 47.  The trial court agreed and stated in its order that
"[p]laintiff was separated from payroll by Labor Works" and "[t]he law of Indiana is clear that
the Trial Court does not have jurisdiction over a Plaintiff who has separated from the employer's
payroll."  App. at 23.  In substance, therefore, Labor Works' motion was not a motion for
summary judgment pursuant to Trial Rule 56(C), but rather a motion to dismiss for lack of
subject matter jurisdiction pursuant to Trial Rule 12(B)(1), and we review it accordingly.

To determine the appropriate standard of review for a trial court's grant of a pretrial
motion to dismiss under Trial Rule 12(B)(1), we must begin by asking (1) "whether the trial
court resolved disputed facts," and if so, (2) whether it conducted an evidentiary hearing or
instead ruled on a paper record.  GKN Co. v. Magness, 744 N.E.2d 397, 401 (Ind. 2001).  We
answer the first question in the affirmative, noting that the parties have presented conflicting
accounts of various Labor Works policies and employment practices.  Indeed, as in Magness,
"several facts before the trial court were in dispute and just as important even for those facts not
in dispute, the parties disagree about the inferences to be drawn from those undisputed facts."
Id.  As to the second question, we note that the trial court did conduct a hearing in this case, but

7

that it was apparently an "oral argument," App. at 10, rather than an "evidentiary hearing" in which "the court typically engages in its classic fact-finding function, often evaluating the character and credibility of witnesses."[5] Magness, 744 N.E.2d at 401. Thus, we conclude the trial court ruled on a paper record. As such, we are no less able than the trial court to determine whether it has subject matter jurisdiction, and we review its factual findings as well as its legal conclusions de novo. Id.

## The Court Must Determine Which Statutory Scheme Applies

As a threshold matter, Labor Works urges us to conclude that the Department of Labor, rather than the trial court, must determine whether Walczak voluntarily left her employment and thus is entitled to bring her claim under the Wage Payment Act or was involuntary separated from the payroll and thus is required to bring her claim under the Wage Claims Act. Both Walczak and the State, writing on the Department's behalf, argue the trial court is the proper forum for the resolution of that question.[6]

---

[5] The precise content of the hearing remains a mystery to us because Walczak did not request a transcript in her Notice of Appeal. In her case summary, she stated that she did not request a transcript "because no evidentiary record was made in regards to the motion for summary judgment." Appellant's Case Summary at 3. The trial court's description of the hearing as "oral argument" comports with Walczak's assessment, App. at 10, and although Labor Works apparently disagrees that the trial court decided the case "without the benefit of an evidentiary hearing," it does not point to any evidence presented at the hearing beyond that contained in the Appellant's Appendix. Br. in Resp. to Pet. to Trans. at 3–4. Thus, we find the hearing was not an "evidentiary hearing" as we used the term in Magness.

Our record on appeal consists of "the Clerk's Record and all proceedings before the trial court . . . whether or not transcribed or transmitted to the Court of Appeal." Ind. Appellate Rule 27. We encourage parties to present the fullest possible record for our consideration.

[6] The Department of Labor—an administrative agency that comes before us arguing for less authority rather than more—is an "odd duck" indeed, under the circumstances. We commend the Department on its respect for the constitutionally mandated separation of powers, and we find its assessment of its own jurisdiction very persuasive.

"To the extent the issue turns on statutory construction, whether an agency possesses jurisdiction over a matter is a question of law for the courts." Ind. Dep't of Env. Mgmt. v. Twin Eagle LLC, 798 N.E.2d 839, 844 (Ind. 2003). In Twin Eagle, we found that a real estate developer could bring a declaratory judgment action against the Indiana Department of Environmental Management without exhausting his administrative remedies because the issue he raised—whether IDEM had the authority to regulate "waters of the state"—was jurisdictional. Id. at 849. Just so here; the issue—whether Walczak is covered by the Wage Payment Act and thus may bring her case directly to court or by the Wage Claims Act and thus must first exhaust the administrative process available to her through the Department of Labor—is jurisdictional. The resolution of that issue depends on what the drafters of the two statutes meant when they used the language "voluntarily leaves employment," Ind. Code § 22-2-5-1(b), and "separates any employee from the pay-roll," Ind. Code § 22-2-9-2(a). That is an issue of statutory construction dispositive on the question of jurisdiction, and it therefore lies squarely within the judicial bailiwick. Indeed, trial courts have ably resolved this very question in the past—even when it presented itself as a mixed question of fact and law rather than a pure question of law. See, e.g., J Squared, Inc. v. Herndon, 822 N.E.2d 633, 640 n.4 (Ind. Ct. App. 2005) (noting that "[a]lthough there was conflicting evidence regarding whether [the claimant] left [his employment] voluntarily or involuntarily, the trial court found, and [the employer] does not dispute on appeal, that [the employer] fired [the claimant].").

The primary case Labor Works cites in support of its argument, Johnson v. Celebration Fireworks, Inc., 829 N.E.2d 979 (Ind. 2005), is readily distinguishable. In Johnson, a dispute arose between the State Fire Marshal and a seller of fireworks that operated one Indiana warehouse and ninety-six retail locations. Id. at 981. The seller maintained certain wholesaler requirements applied only to its warehouse and not to each of its retail locations, and it sued for a declaratory judgment to that effect. Holding that the trial court had no jurisdiction over the seller's claim, we said

> [u]nlike the state agency in Twin Eagle, there is absolutely no question in the present case of the Fire Marshal's legal authority to license fireworks wholesalers; the question here is at most a mixed question of law and fact—and, quite likely in our view, a pure question of fact—as to whether each of the individual outlets selling fireworks is itself a wholesaler.

9

Id. at 983.  If the outlets were not wholesalers but instead retailers, they still would have fallen within the Fire Marshal's jurisdiction.  Id. at 981 (citing Ind. Code § 22-11-14-7 (2007), which requires fireworks retailers to obtain a permit from the Fire Marshal); see also Ind. Code § 22-11-14-5(a) (2007) ("The state fire marshal shall remove at the expense of the owner, all stocks of fireworks or combustibles possessed, transported, or delivered in violation of this chapter."). Johnson was not really about jurisdiction at all, but about exhaustion.  Here, in contrast, the issue is truly jurisdictional; if Walczak was involuntarily separated from the payroll, the trial court has no jurisdiction over her claim, but if she voluntarily left her employment, the trial court does have jurisdiction.  Johnson, thus, does not apply.

Finally, if we held otherwise, we effectively would add an exhaustion requirement to the Wage Payment Act—an exhaustion requirement that, as our Court of Appeals has noted, is wholly absent from the statutory text.  E&L Rental Equip., Inc. v. Gifford, 744 N.E.2d 1007, 1010 (Ind. Ct. App. 2001) ("[A] plaintiff bringing a claim under I.C. § 22-2-5-2 is not required to first exhaust any available administrative remedies prior to filing suit.").  Claimants covered by the Wage Payment Act thus would be unable to invoke their statutory right to proceed directly to court.  That is not what the General Assembly intended, and even if we wished to do so, we have no authority to modify its statutory scheme.


**Walczak May Bring Her Claim Under the Wage Payment Act**


Labor Works predicated its motion to dismiss on the theory that the trial court lacked subject matter jurisdiction because Walczak failed to exhaust available administrative remedies before filing her claim.  "As a general proposition, the party challenging subject matter jurisdiction carries the burden of establishing that jurisdiction does not exist."  GKN Co. v. Magness, 744 N.E.2d 397, 404 (Ind. 2001).  A plaintiff is only required to exhaust her administrative remedies under the Wage Claims Act if, at the time she filed her complaint, she had been involuntarily separated from her employment.  Hollis v. Defender Sec. Co., 941 N.E.2d 536, 540 (Ind. Ct. App. 2011).  This case therefore turns on the meaning of "separate[d] from the

10

pay-roll" as it is used in the Wage Claims Act. That is a question of statutory interpretation, and we will answer it now.

As when we construe any statute, our primary goal is to effectuate legislative intent. Shepherd Props. Co. v. Int'l Union of Painters & Allied Trades, Dist. Council 91, 972 N.E.2d 845, 852 (Ind. 2012). We presume the General Assembly intended the statutory language to be applied logically and consistently with the statute's underlying policy and goals, id., and we avoid construing a statute so as to create an absurd result. St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699, 704 (Ind. 2002).

Although the precise question before us—what the drafters of the Wage Claims Act meant by "separate[d] from the pay-roll"—is one of first impression for us, other federal and state courts have frequently assumed without deciding that the answer is "fired." See, e.g., Treat v. Tom Kelley Buick Pontiac GMC, Inc., 646 F.3d 487, 490 (7th Cir. 2011) ("The language of the Indiana Code suggests, and the Indiana state courts have repeatedly confirmed, that the Payment Statute provides an avenue for relief to employees seeking unpaid wages who voluntarily leave their employment or who remain employed and whose wages are overdue. The Claims Statute, on the other hand, applies to employees seeking unpaid wages after their employer has fired them." (citing Steele, 766 N.E.2d at 705)); J Squared, Inc. v. Herndon, 822 N.E.2d 633, 640 n.4 (Ind. Ct. App. 2005) ("There is some confusion among the parties whether the Wage Claims Statute or the Wage Payment Statute applies. The former applies where, as here, an employee is fired, and the latter applies where an employee quits."); see also Thomas v. H & R Block E. Enters., Inc., 1:08-CV-00667-DFH-DML, 2009 WL 2856485 (S.D. Ind. Aug. 28, 2009) aff'd, 630 F.3d 659 (7th Cir. 2011) (noting the Wage Claims Statute "applies when an employee is fired."); Gavin v. Calcars AB, Inc., 938 N.E.2d 1270, 1271 (Ind. Ct. App. 2010) (same).

We find the reasoning in these opinions persuasive, and our holding today is a modest extension of it. When an employee who did not leave her job on her own terms makes a claim for wages, it makes sense to subject her claim to administrative review before it may proceed directly to court. See Quimby v. Becovic Mgmt. Grp., Inc., 962 N.E.2d 1199, 1201 (Ind. 2012) (Sullivan, J., dissenting from denial of trans. ("I note that the purpose (or at least the effect) of the administrative exhaustion requirement under the Wage Claims Statute is to create a barrier to

11

court."")).  Such claims are more likely to be motivated by animus than claims made by current employees or former employees who left by choice.  On the other hand, an employee who knows that she may soon resume her employment presumably would have less reason to feel animus. Thus, in order to properly effectuate legislative intent as best we can discern it, we hold that a day labor employee is not "separate[d] from the pay-roll" for the purpose of the Wage Claims Act unless that employee has no immediate expectation of possible future employment with the same employer.

Here, Walczak clearly did have such an immediate expectation.  Indeed, although she did not seek a job assignment from Labor Works on the day she filed her complaint, she successfully sought assignments on the following four days, and she continued to work for Labor Works on a sporadic basis for the next four weeks.  We also note that the Labor Works employment agreement clearly distinguishes between termination ("I understand that if I become an employee of Employer's, only I, or Employer can terminate my employment.") and reassignment ("When my assignment ends, I must report to my Employer's office for my next job assignment.").

Taken together, all of these circumstances lead us to conclude Walczak was not "separate[d] from the pay-roll" and need not comply with the requirements of the Wage Claims Act.  Labor Works may say that all its employees are terminated after every shift and rehired the next day, like phoenixes rising daily from the ashes, but its employees, unlike those who have really been "separate[d] from the pay-roll," have a realistic expectation that if they show up the next day, they may receive a job assignment.  In other words, Walczak is more duck than phoenix.

What is more, Labor Works asks us to adopt a rule that would permit Walczak to bring her claim straight to court if she had filed it on January 27 or February 2, when she worked shifts at Labor Works, but not on February 1, when she did not work a shift.  Such a rule might conceivably operate to strip any employee working on a temporary, on-call, or as-needed basis— a substitute teacher, for instance—of her right to proceed directly to court.  The General Assembly surely did not intend that result.

Ultimately, we believe the drafters of the Wage Payment Act intended the statute to benefit the entire Indiana workforce, including day labor employees. Day labor is not a newcomer to Indiana's economy, [7] and the drafters of the Wage Payment and Wage Claims Acts were likely aware of its role in the state's employment landscape. See, e.g., Indiana Bridges Historic Context Study, 1830s–1965 INDOT CC No. 050108, M&H Architecture, Inc. (Feb. 2007) (citing "Report of the Indiana State Highway Commission," in Year Book of the State of Indiana for the Year 1931 1076–1077 (Indianapolis, Ind.: William B. Burford, 1932)) (stating that in 1932, the ISHC "employed 8,000 men on an hourly basis for day-labor"). Therefore, day labor employees are no less entitled to the statutory protections that the General Assembly has provided than any other Hoosier employees.

**Conclusion**

We hold that Brandy Walczak, on the day she filed her complaint, had not been separated from the Labor Works payroll. She may thus proceed in the trial court with her claim under the Wage Payment Act. We therefore reverse the trial court's dismissal of Walczak's claim[8] and remand this case for further proceedings consistent with this opinion.

Dickson, C.J., Rucker, David, and Rush, JJ., concur.

---

[7] Indeed, day labor employment significantly predates the founding of our nation. See, e.g., 8 The Original Catholic Encyclopedia 189 (describing the life of St. Isidore the Labourer (c. 1070–1130), "the patron of peasants and day-labourers.").

[8] As we discussed in the body of our opinion, the trial court styled its dismissal as a grant of summary judgment in Labor Works's favor. Because it operated as a dismissal pursuant to Trial Rule 12(B)(1), however, we name it accordingly; we, like Mr. Riley, call this bird a duck.