

IN THE

# Court of Appeals of Indiana

Indiana Bureau of Motor Vehicles and Attorney General of Indiana,

*Appellants-Respondents*

v.

Prescott D. Craig,

*Appellee-Petitioner*



FILED

Sep 24 2024, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

September 24, 2024

Court of Appeals Case No.
24A-MI-227

Appeal from the Morgan Superior Court

The Honorable Brian H. Williams, Judge

Trial Court Cause No.
55D02-2311-MI-1936

**Opinion by Judge Tavitas**
Judges Crone and Bradford concur.

**Tavitas, Judge.**

## Case Summary[1]

Prescott Craig is an Indiana resident whose Indiana driving privileges have been suspended. Separately, Craig's driving privileges in Illinois have been revoked. Because Craig's Indiana driving privileges were suspended, Craig petitioned the trial court for specialized driving privileges in Indiana, which the trial court granted. The trial court ordered Craig to carry a "valid license or permit" in his vehicle while exercising his specialized driving privileges. Appellant's App. Vol. II p. 20.

Craig then requested that the Indiana Bureau of Motor Vehicles ("BMV") issue him a specialized driving privileges credential; however, the BMV refused to issue the credential based on its interpretation of the interstate Driver License Compact, Indiana Code Section 9-28-1-3. According to the BMV, because the state of Illinois revoked Craig's driving privileges in Illinois, the BMV cannot issue Craig the credential. After exhausting his administrative remedies, Craig then petitioned for judicial review, which the trial court granted. The trial court ordered the BMV to issue Craig a specialized driving privileges credential. The BMV and the Indiana Attorney General (collectively "Defendants") now appeal. Concluding that the Driver License Compact does not prohibit the BMV from issuing Craig a specialized driving privileges credential, we affirm.

---

[1] We held oral argument in this case on August 29, 2024. We thank counsel for their advocacy.

## Issue

Defendants present one issue on appeal, which we restate as whether the trial court erred by granting Craig's petition for judicial review and ordering the BMV to issue Craig a specialized driving privileges credential when, according to the BMV, the BMV is precluded from issuing the credential under the Driver License Compact.

## Facts

Craig is an Indiana resident with an extensive history of traffic violations. His Indiana driver's license has been suspended numerous times due to Craig driving while under the influence, driving while suspended, failing to file proof of insurance, and other reasons. In 2010, Craig operated a vehicle while under the influence in Illinois. As a result, that year, the BMV suspended Craig's Indiana driver's license for three months. Additionally, because Craig had accumulated three previous similar offenses, the state of Illinois, in 2012, created a record indicating that Craig's "Illinois driver's license and/or privileges" were revoked. Appellant's App. Vol. II p. 36. Craig, however, had never been a resident of Illinois nor held an Illinois driver's license credential.

Craig's Indiana driving privileges were later suspended for unrelated reasons, and, in July 2023, Craig petitioned the trial court for specialized driving

privileges to travel to and from his place of employment and other locations.[2] Craig served his petition on the BMV and the Morgan County Prosecuting Attorney in accordance with the governing statutory procedures. Neither the prosecuting attorney nor the BMV objected to Craig's request for specialized driving privileges. On August 18, 2023, the trial court entered an order granting Craig specialized driving privileges. The order required Craig to "carry on his/her person, a valid license or permit issued by the Indiana Bureau of Motor Vehicles or have the valid license or permit in the vehicle being operated by [Craig]." *Id*. at 20.

[6] After the trial court granted Craig specialized driving privileges, Craig requested that the BMV issue him a "driving credential that shows specialized driving privileges . . . ." Tr. Vol. II p. 11. The BMV, however, refused to issue the credential due to the state of Illinois' revocation of Craig's Illinois driver's license and/or privileges. The BMV instructed Craig to "clear the revocation . . . in Illinois in order to be eligible for an Indiana driving credential." *Id*. at 18. Upon Craig's subsequent request for an administrative review of the BMV's decision, the BMV conducted a material error review and found no material error in its decision.

_____

[2] Craig's petition noted the following Indiana driving privilege suspensions:

> On or about July 22, 2015, for Operating While Intoxicated under Cause No. 55D01-1507-F6-000110 (ID #30), for life; on or about May 23, 2019, for 10-Year Habitual (ID #45), with an expiration date of May 20, 2019; and on or about February 24, 20[1]9, for 10-Year Habitual (ID #42), with an expiration date of February 21, 2029.

Appellant's App. Vol. II p. 19.

[7]     On November 2, 2023, Craig petitioned for judicial review of the BMV's decision. Defendants filed a response arguing that, pursuant to the Driver License Compact, the BMV could not issue Craig a "driving credential until the Illinois revocation is cleared." *Id*. at 42. The trial court held a hearing on Craig's petition on December 15, 2023. Craig testified that he has only ever been a resident of Indiana and has never held an Illinois driver's license. Craig argued that, because he has never held an Illinois driver's license, the Illinois revocation did not prohibit the Indiana BMV from issuing him the credential. Defendants argued in response that, when an individual commits a traffic offense in Illinois, that state's procedure is to "create . . . a driver license record for that individual and treat[] them as if they were licensed," and, "in the BMV's eyes[,] that prohibits [the BMV] from issuing a driving credential to [Craig]," pursuant to the Driver License Compact. Tr. Vol. II pp. 11, 14.

[8]     Later that day, the trial court issued an order granting Craig's petition for judicial review. The trial court rejected Defendants' interpretation of the Driver License Compact that Illinois could "create a driver's license[] for an Indiana resident who has not requested an Illinois [d]river's license[], by virtue of the Indiana [r]esident driving through the state of Illinois" and that Illinois could then "revoke[] the [d]river's license[] they created but the Indiana [r]esident did not request." Appellant's App. Vol. II p. 10. The trial court ordered the BMV to issue Craig a "[d]river's license/credential" reflecting his specialized driving privileges. *Id.* at 12. Defendants now appeal.

## Discussion and Decision

[9] Defendants concede that Craig is permitted to drive in Indiana pursuant to the terms of his specialized driving privileges. Defendants, however, argue that, pursuant to the Driver License Compact, the trial court erred by granting Craig's petition for judicial review and ordering the BMV to issue Craig the requested credential.

## I. Standard of Review

[10] When we review an administrative agency's decision, we stand in the trial court's shoes. *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 991 (Ind. 2014). We review questions of law de novo. *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 619 (Ind. 2019) (quoting *Ind. Alcohol and Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017)). Although we are not bound by the agency's conclusions of law, "'[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.'" *Id.* (quoting *Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 123 (Ind. 2012)). "In fact, if the agency's interpretation is reasonable, we stop our analysis and need not move forward with any other proposed interpretation." *Id.* In this manner, "[o]ur review of

agency action is intentionally limited, as we recognize an agency has expertise in its field and the public relies on its authority to govern in that area." [3] *Id*.

[11] This case involves interpretation of the Driver License Compact. When interpreting a statute, we utilize the following well-known standards:

> We [] review questions of law, such as the interpretation of a statute, de novo. *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015). When construing a statute, our primary goal is to determine and effectuate the legislature's intent. *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1283 (Ind. 2009). To discern that intent, we first look to the statutory language and give effect to its plain and ordinary meaning. *Jackson v. State*, 50 N.E.3d 767, 772 (Ind. 2016). Where the language is clear and unambiguous, "there is 'no room for judicial construction.'" *Id.* (quoting *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 (Ind. 2002)). We presume the legislature intended the statutory language to be applied "logically and consistently with the statute's underlying policy and goals, and we avoid construing a statute so as to create an absurd result."

---

[3] Both parties on appeal treat this case as if it were governed by the Administrative Orders and Procedures Act ("AOPA"), Indiana Code Article 4-21.5. At the trial level, however, the parties indicated that the case was instead governed by Indiana Code Chapter 9-33. We need not decide which statute governs because we are faced with a pure question of law and neither statute affects our review of this issue.

We also note that our legislature recently amended the AOPA to provide that "[t]he court shall decide all questions of law, including any interpretation of a federal or state constitutional provision, state statute, or agency rule, without deference to any previous interpretation made by the agency." Ind. Code § 4-21.5-5-11(b) (effective July 1, 2024). The amended version of the AOPA, however, "does not apply to an administrative proceeding or a proceeding for judicial review pending on June 30, 2024" and only applies to

    (1) an administrative proceeding or a proceeding for judicial review commenced after June 30, 2024; or

    (2) an administrative proceeding conducted after June 30, 2024, on remand from a court.

Ind. Code § 1-1-5.5-24. Craig petitioned for judicial review on November 1, 2023; thus, the amended version of the AOPA would not apply here.

*Walczak v. Lab. Works-Ft. Wayne LLC,* 983 N.E.2d 1146, 1154 (Ind. 2013).

*Culver Cmty. Tchrs. Ass'n v. Ind. Educ. Emp. Rels. Bd*., 174 N.E.3d 601, 604-05 (Ind. 2021).

## II. The Driver License Compact does not preclude the BMV from issuing Craig a specialized driving privileges credential.

### A. Specialized Driving Privileges

[12] Craig petitioned for and was granted specialized driving privileges by the trial court pursuant to Indiana Code Sections 9-30-16-3 and -4. Our Court has explained the following regarding specialized driving privileges:

> To ameliorate the adverse effects of [driving] suspensions while maintaining public safety, the Indiana General Assembly enacted a legislative scheme that establishes the procedure for suspended drivers to petition courts for specialized driving privileges. Pub. L. No. 217-2014, § 154, 2014 Ind. Acts 2675, 2759-61 (codified as amended at I.C. 9-30-16 (2019)). The statute, enacted in 2014, distinguishes between drivers whose privileges have been suspended by court order and those who have been suspended by BMV administrative action. I.C. §§ 9-30-16-3, -4. But no matter the source of the underlying suspension, when they are granted, specialized driving privileges provide relief to suspended drivers by allowing them to drive for limited purposes and under certain conditions that are set at the trial court's discretion. I.C. § 9-30-16-3(d).

*Ind. Bureau of Motor Vehicles v. McClung*, 138 N.E.3d 303, 308-09 (Ind. Ct. App. 2019).

[13]   Indiana Code Section 9-30-16-3(f), provides that a person who has been granted specialized driving privileges "shall":

> (1) maintain proof of future financial responsibility insurance during the period of specialized driving privileges;
>
> (2) carry a copy of the order granting specialized driving privileges or have the order in the vehicle being operated by the individual;
>
> (3) produce the copy of the order granting specialized driving privileges upon the request of a police officer; and
>
> (4) carry a validly issued state identification card or driver's license.[4]

[14]   It is customary for the BMV to issue an individual granted specialized driving privileges a special driver's license credential that specifically notes that the individual's driving privileges are restricted to the terms of the specialized driving privileges order.[5]  We will refer to this credential as a "specialized driving privileges credential."[6]  And in granting Craig specialized driving

---

[4] The use of "or" in subsection (4) suggests that a driver with specialized driving privileges need not carry a driver's license so long as he or she carries a validly issued state identification card.

[5] *See Endorsement and Restrictions*, Bureau of Motor Vehicles (last visited July 8, 2024), https://www.in.gov/bmv/licenses-permits-ids/learners-permits-and-drivers-licenses-overview/drivers-license/endorsements-and-restrictions/ [https://perma.cc/M2BA-KBUA] (last visited July 8, 2024) (noting that "Restriction 5—Conditional . . . is applied to a driver's license when driving privileges are restricted to the parameters of a court order granting specialized driving privileges").

[6] At oral argument, the BMV did not provide an official name for such credential; however, the credential is colloquially referred to as a conditional, restricted, or hardship license.

privileges here, the trial court required Craig to carry on his person or in his vehicle a "valid license or permit" issued by the BMV along with the order granting specialized driving privileges. Appellant's App. Vol. II p. 20. The BMV, however, refused to issue Craig a specialized driving privileges credential pursuant to its interpretation of the Driver License Compact. We, thus, turn to the language of the Driver License Compact.

## B. The Driver License Compact

[15] Defendants argue that, pursuant to the Driver License Compact, the BMV is precluded from issuing Craig a specialized driving privileges credential because Illinois revoked Craig's Illinois driver's license and/or privileges. Although we give weight to the BMV's interpretation of the Driver License Compact, we conclude that the BMV's interpretation of the statute is not in accordance with the statutory text.

[16] The Driver License Compact is an interstate agreement now codified under Indiana Code Section 9-28-1-3 and was adopted in Indiana in 1967. Acts of 1967, Ch. 220, § 1. This Court has described the Driver License Compact as follows:

> The Interstate Driver's License Compact was developed to give states a means for cooperative action to control problem drivers. Essentially, it provides for an orderly method for exchange of information to keep unsafe drivers from accumulating violations in many jurisdictions and escaping action on the part of the state in which the driver holds a license.

*Ind. Bureau of Motor Vehicles v. Douglass*, 135 N.E.3d 598, 605 (Ind. Ct. App. 2019) (citing *In re Johnson*, 543 A.2d 454, 456 (N.J. Super. Ct. App. Div. 1988)). Pursuant to Article 9 of the Driver License Compact, "'the compact shall be 'liberally construed so as to effect the purposes thereof.'" *Id.* at 606 (quoting I.C. § 9-28-1-3).

[17] Defendants argue that Article 5 of the Driver License Compact applies here. Article 5 provides,

### Applications for New Licenses

Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive issued by any other party state. The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:

(1) The applicant has held such a license, but the same has been suspended by reason, in whole or in part, of a violation and if such suspension period has not terminated.

(2) The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of one (1) year from the date the license was revoked, such person may make application for a new license if permitted by law. The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the highways.

(3) The applicant is the holder of a license to drive issued by another party state and currently in force unless the applicant surrenders such license.

Ind. Code § 9-28-1-3, Article 5.

[18] By its own terms, Article 5 of the Driver License Compact applies only to persons who "have held" or are the "holder" of a license to drive "issued" in "another party State" and are now applying for a "new" license in a different State, namely Indiana. Article 5, thus, applies only to an individual who previously resided in a state other than Indiana, held a driver's license credential authorizing the individual to drive in that state, and is now applying for a credential authorizing the individual to drive in Indiana. It does not apply to a resident of Indiana who has never lived in or held a driver's license from any other state, such as Craig. Accordingly, Article 5 is inapplicable here.

[19] Despite the clear language of Article 5, Defendants argue that "license" in Article 5 refers, not to a driver's license credential, but to generalized "driving privileges," or in other words, an individual's general "freedom" to drive a vehicle in a certain state. Appellee's Br. pp. 17-19. According to Defendants, thus, Illinois's revocation of Craig's Illinois driving privileges was equivalent to the revocation of a "license" under Article 5, Section 1.

[20] Although "license" is not defined under the Driver License Compact, Defendants rely on historical definitions of "driver's license" under the Indiana

Code which are no longer in force.[7]  The State argues that, in 1991, when our legislature recodified much of our motor vehicle law, the legislature defined "driver's license" as "any type of license **or privilege** to operate a motor vehicle issued under the laws of a jurisdiction."  1991 Ind. Legis. Serv. Pub. L. 2-1991 (codifying this definition under then-Indiana Code Sections 9-13-2-48 and 9-28-2-4) (emphasis added).  These definitions, however, did not apply to the Driver License Compact[8] and, thus, do not support the State's argument that "license" under Article 5 of the Driver License Compact refers to general driving privileges.

[21]  The text of Article 5 also does not support Defendants' interpretation that "license" under Article 5 refers to general driving privileges.  Article 5, Section 3 provides that "the applicant is the holder of a **license** to drive issued by

---

[7] Today, the terms "driver's license" and "driving privileges" are defined separately by statute.  "Driver's license" means:

> (1) Any type of license issued by the state in the form of **a physical credential** authorizing an individual to operate the type of vehicle for which the license was issued, in the manner for which the license was issued, on a highway.  The term includes any endorsements added to the license under IC 9-24-8.5.

> (2) Any type of license issued by the state in the form of a **mobile credential** authorizing an individual to operate the type of vehicle for which the license was issued, in the manner for which the license was issued, on a highway.  The term includes any endorsements added to the license under IC 9-24-8.5.

Ind. Code § 9-13-2-48 (emphasis added).  "Driving privileges," on the other hand, "means the authority granted to an individual that allows the individual to operate a vehicle of the type and in the manner for which the authority was granted."  Ind. Code § 9-13-2-48.3.  These definitions, however, specifically do not apply to the Driver License Compact.  *See* Ind. Code 9-13-1-2 (noting that the definitions in Indiana Code Article 9-13 "do not apply to IC 9-28," under which the Driver License Compact is codified).

[8] The definition of driver's license under 9-13-2-48 did not apply to Indiana Code Article 9-28, which includes the Driver License Compact.  *See* Ind. Code § 9-13-1-2, as provided in 1991 Ind. Legis. Serv. Pub. L. 2-1991.  Furthermore, the definition of driver's license under 9-28-2-4 only applied "[a]s used in this **chapter**," i.e. Indiana Code Chapter 9-28-2, which does not include the Driver License Compact.  *Id.* (emphasis added).

another party state and currently in force unless the applicant **surrenders** such license." Ind. Code § 9-28-1-3, Article 5(3) (emphasis added). In other words, an individual who holds a license issued by one state cannot hold a license issued by a different state unless the individual surrenders the former license. This provision implements the Driver License Compact's "one license" concept "that drivers may not hold licenses in more than one jurisdiction . . . ." *In re Johnson*, 543 A.2d at 456. An individual, thus, may hold only one Article 5 "license" at a time.

[22] A licensed individual, on the other hand, is generally free to drive throughout the United States. Indeed, the Driver License Compact recognizes the "reciprocal recognition of licenses to drive" in party states. Ind. Code § 9-28-1-3, Article 1(b)(2). Because an individual is generally free to drive in multiple states but, pursuant to the Driver License Compact, can hold only one "license," the term "license" in Article 5 does not refer merely to an individual's general freedom to drive in any given state, as Defendants contend.[9] Accordingly, the Defendants' argument that "license" means driving privileges

---

[9] Defendants also argue that, pursuant to Article 5, Section 2, the BMV was not required to issue Craig a specialized driving privileges credential because of his history of unsafe driving. Appellant's Br. pp. 17-18 (noting that, pursuant to Article 5, Section 2, "[t]he licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the highways"). Because Article 5 does not apply here, however, we reject this argument. Moreover, the BMV did not oppose the grant of specialized driving privileges and concedes that Craig can drive pursuant to those privileges.

fails, and Article 5 does not apply here.[10]  The Driver License Compact does not prohibit the BMV from issuing Craig a specialized driving privileges credential.

## Conclusion

The Driver License Compact does not prohibit the BMV from issuing Craig a specialized driving privileges credential.  We, therefore, affirm the judgment of the trial court.

Affirmed.

Crone, J., and Bradford, J., concur.

ATTORNEYS FOR APPELLANTS

Theodore E. Rokita
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

---

[10] To be sure, nothing in the Driver License Compact prohibits the refusal to issue a license to an individual whose license to drive or driving privileges are suspended in another state when a specific statute other than the Driver License Compact authorizes this refusal.  *See, e.g.*, *Roop v. Commonwealth*, 6 A.3d 1, 2 (Pa. Commw. Ct. 2010) (holding that, under Pennsylvania law that prohibited the licensing authority from issuing a driver's license to an individual whose "operating privilege is suspended or revoked in this or any other state," Pennsylvania licensing authority could refuse to issue a driver's license to plaintiff, a previous Florida resident whose Florida driving privileges were permanently revoked, and that Article 5 of the Driver License Compact did not require a different result); *Gwin v. Motor Vehicle Admin.*, 869 A.2d 822, 836 (Md. 2005) (applying a similar Maryland law and reaching the same conclusion).  Without such a law, however, the Driver License Compact does not independently authorize the refusal of a license on that basis.

We note that Indiana Code Section 9-24-2-3(a) lists the conditions under which the Indiana BMV shall refuse to issue a driver's license to an individual.  This statute, however, contains no language suggesting that it applies to revocations or suspensions outside of Indiana.  Section 9-24-2-3(a), thus, is different than the statutes in *Roop* and *Gwin*, *supra*.  The BMV, moreover, does not rely on this statute.

ATTORNEY FOR APPELLEE

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana