

FILED

Jul 23 2025, 10:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Indiana Supreme Court

Supreme Court Case No. 25S-JV-190

## D.W.
*Appellant*

–v–

## State of Indiana
*Appellee*

Argued: April 9, 2025 | Decided: July 23, 2025

Appeal from Marion Superior Court

No. 49D15-2305-JD-4181
The Honorable Danielle P. Gaughan, Judge
The Honorable Peter P. Haughan, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-JV-2775

**Opinion by Justice Massa**

Chief Justice Rush and Justices Slaughter, Goff, and Molter concur.

**Massa, Justice.**

The State initiated delinquency proceedings against a juvenile for child molestation and dissemination of material harmful to minors. During the initial hearing, the juvenile court permitted the juvenile's counsel to waive a formal advisement of rights without first conducting a **personal** interrogation of the juvenile to confirm he wished to join counsel's waiver. After a fact-finding hearing, during which the juvenile exercised his constitutional rights and held the State to its burden of proof, he was ultimately adjudicated a delinquent. On appeal, the juvenile argues (1) the juvenile court erred as a matter of law by failing to provide the formal advisement of rights and (2) his counsel's waiver of the formal advisement was invalid for failure to ensure the juvenile knowingly and voluntarily joined with the waiver. For the reasons below, we agree that the juvenile court erred in failing to formally advise the juvenile of his rights and that the waiver was invalid. However, because we find the error was harmless under these particular facts, we affirm.

# Facts and Procedural History

D.W., born in 2006, is the second oldest of six children born to Mother. Of those siblings, D.W.'s younger brother, A.O., was born in 2015. Sometime prior to March 2020, when all the siblings lived with Mother, D.W. molested A.O. and showed pornography to the siblings. A.O. did not remember when the touching first began but noted that it occurred around once a day while Mother was away at work and was frequent enough that A.O. "got used to it."

Mother noticed the children were acting differently and suspected that D.W. was molesting his siblings, so the day before D.W.'s fourteenth birthday, after D.W. assaulted one of his younger sisters and kicked a hole in the wall, Mother kicked D.W. out of the house. D.W. then went to live with Father. Three years after D.W. left Mother's house, Mother also kicked A.O. out of the house upon discovering that A.O. was inappropriately touching his two younger sisters. A.O. was placed with a caregiver and later disclosed to her and Mother that D.W. had molested him but that it stopped after D.W. was sent to live with Father.

When D.W. was seventeen, the State filed a petition alleging D.W. was a delinquent child for committing two acts of child molesting, one as a Level 3 felony and one as a Level 4 felony if committed by an adult, and for dissemination of matter harmful to minors, a Level 6 felony if committed by an adult. The State amended its initial petition twice—once to correct a mistake in the time period alleged, and a second time to correct the end date. That said, two components of the delinquency petition never changed: the initial date in the charged time period (January 1, 2012), and the age of the victim (eight years old). The final petition provided:

> COUNT I – Child Molesting, a Level 3 Felony I.C. 35-42-4-3(a)
>
> Between January 1, 2012[,] and March 3, 2020, [D.W.] did knowingly or intentionally perform or submit to sexual intercourse or other sexual conduct as defined in Ind. Code Sec. 35-31.5-2-221.5 with A.O.[,] a child under the age of fourteen years, that is eight (8) years old;
>
> COUNT II – Child Molesting, a Level 4 Felony I.C. 35-42-4-3(b)
>
> Between January 1, 2012[,] and March 3, 2020, [D.W.] did perform or submit to fondling or touching with A.O., a child under the age of fourteen years, that is (8), with the intent to arouse or satisfy the sexual desires of the child or respondent;
>
> COUNT III – Dissemination of Matter Harmful to Minors, a Level 6 Felony I.C. 35-49-3-3(a)(1)
>
> Between January 1, 2012[,] and March 3, 2020, [D.W.] did knowingly or intentionally disseminate matter to A.O., a minor, that is harmful to minors, to-wit: pornography[.]

During the initial hearing, D.W. and Father noted their confusion as to both the date and the identity of the victim alleged in the petition. Regarding the date, D.W.'s counsel commented, "Two thousand twelve . . . wow. I don't know how old the child was at the beginning of that. They're saying eight years old, that period of time would put the child as if, if born an infant." Further, as to the identity of the victim, Father stated the following:

> Well, apparently allegedly, sometime between eleven—three and eleven years ago, he's alleged to have touched someone, a sister or half-sister. . . . [I]t's not supposed to be the sister. It's supposed to be the little brother. So I don't know where y'all getting your information from, but now it's the little girl. But when the lady called me from probation . . . she said that my daughter, the both [sic] have molesting [sic] my son and my son have [sic] molested my daughter.

Despite the confusion, however, D.W. neither objected to either amendment nor moved to dismiss the petition for insufficient information.

At the initial hearing, the juvenile court read the allegations against D.W. and confirmed with the State that it was not seeking waiver to adult court. The court then asked D.W.'s counsel, "[D]oes [D.W.] waive any further formal reading of his rights and dispositional alternatives and enter denial to the charges today?," to which his counsel responded, "[D.W.] does waive further readings, your honor and yes, please enter denials." The court, without asking the same questions to D.W., addressed D.W. with the following:

> [T]here will be a form with [sic] listing all of your rights and disposition alternatives and you most likely have already signed it and it hasn't been or ordered or brought into the court's electronic database system. But there'll be a form listing your rights and dispositional alternatives. Uh Mr. Thurston or someone from the Public Defender Agency will go over those with you. They're just a listing of all the rights that you have at this point. You're not giving up or waiving any right at this point. So they will provide that to you and I will enter a denial on your behalf. So formally, you have denied the charges.

The court then set a fact-finding hearing. At the hearing, D.W. was represented by counsel and had the opportunity to confront and cross-examine witnesses against him. Both A.O., who was eight years old at the time of the hearing, and Mother testified for the State. A.O. testified that D.W. fondled him and forced him to watch porn. He also stated that one of his sisters molested him as well. Mother reiterated that she kicked D.W.

out because "he assaulted [his sister] and kicked a hole in [Mother's] wall," and that she learned of D.W.'s molestation of A.O. sometime afterward.

D.W. and the sister testified for the defense, with both denying the allegations against them. D.W. was personally notified in detail of his right to remain silent and, after the trial court recorded a knowing and voluntary waiver, D.W. proceeded to testify.

The trial court found the State had met its burden on each of the three delinquent acts alleged and adjudicated D.W. accordingly. At the dispositional hearing, the juvenile court ordered that D.W. be placed on probation, with a suspended commitment to the Indiana Department of Correction and then released to Father.

D.W. appealed, arguing (1) that the delinquency petition provided insufficient notice of the charges against him; (2) that the juvenile court erred by failing to formally advise D.W. of his rights under Indiana Code Section 31-37-12-5 ("Advisement Statute"); and (3) that his attorney's waiver of the advisement was invalid under Indiana Code Section 31-32-5-1 ("Juvenile Waiver Statute"). The Court of Appeals unanimously affirmed the juvenile court on all three issues. *D.W. v. State*, No. 23A-JV-2775 (Ind. Ct. App. Aug. 6, 2024) (mem.). Regarding the sufficiency of the delinquency petition, the Court of Appeals acknowledged that D.W. waived this argument, and then reviewed the claim under fundamental error. Although the court noted that the petition "could have been more narrowly drafted," it nonetheless held there were not any misstatements that created uncertainty as to the victim alleged in the petition. *Id.* at *3. In addition, the court noted the delinquency petition clearly identified A.O. as the victim, the probable cause affidavit outlined A.O.'s allegations, and A.O. himself testified at the fact-finding hearing. *Id.* Therefore, "[a]ny mistakes in the delinquency petition d[id] not rise to the level of fundamental error." *Id.*

As to D.W.'s second and third arguments concerning the sufficiency of his advisement and compliance with the Juvenile Waiver Statute, the court analyzed these issues together, again for fundamental error. Specifically, the Court of Appeals explained that the juvenile court was aware of its

responsibility under the Advisement Statute to advise D.W. of his rights, and noted the following: (1) D.W. was represented by counsel at the initial hearing; (2) D.W. was orally advised of the allegations against him; (3) the court confirmed with the State that it would not be seeking waiver to adult court; (4) the court asked counsel whether D.W. would be waiving a further formal reading of his rights and dispositional alternatives, which counsel indeed waived; (5) the court addressed D.W. by referencing a written advisement of rights and dispositional alternatives; (6) the court confirmed with D.W. and Father that they understood what the court had informed them; (7) D.W. did not involuntarily waive any constitutional rights; and (8) D.W. exercised his constitutional rights. *Id.* The Court of Appeals also highlighted that regarding the Juvenile Waiver Statute, D.W. did not make any argument that his waiver was unknowing, involuntary and not personal, and further, his counsel did not waive any of D.W.'s constitutional rights, which the juvenile court expressly noted on the record. *Id.* at *4. The court concluded, "Even assuming error in the advisement of his constitutional rights or with compliance with the juvenile waiver statute, any such error does not rise to the level of fundamental error . . . ." *Id.*

D.W. sought rehearing on the Juvenile Waiver Statute issue to show where he had made the argument that his waiver was not personal. The Court of Appeals granted rehearing to correct this misstatement but otherwise affirmed its conclusions. *See id.*

D.W. petitioned for transfer, which we now grant through separate order, thereby vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).[1]

---

[1] We are granting transfer to address the sufficiency of the juvenile court's advisement, as well as the validity of counsel's waiver of the advisement on D.W.'s behalf. As to the Court of Appeals' treatment and analysis of the delinquency petition's sufficiency, we summarily affirm. *See* App. R. 58(A)(2) (providing that portions of a Court of Appeals' opinion summarily affirmed by this Court "shall be considered as Court of Appeals' authority").

# Standard of Review

Whether the juvenile court properly adhered to its statutorily imposed obligations—a matter of statutory interpretation—is a pure question of law we review *de novo*. *N.L. v. State*, 989 N.E.2d 773, 777 (Ind. 2013). When interpreting a statute, the first step is to give the statute's words their plain and ordinary meaning, considering the structure of the statute in its entirety to promulgate a harmonious reading. *See Fam. & Soc. Servs. Admin. v. Saint*, 258 N.E.3d 972, 980 (Ind. 2025). In addition, "we consider both what the statute does—and does not—say, because we cannot 'add words or restrictions.'" *Id.* (quoting *WTHR-TV v. Hamilton Se. Schs.*, 178 N.E.3d 1187, 1191 (Ind. 2022)). Ultimately, the end goal of construing any statute is to effectuate the intent of the legislature. *N.L.*, 989 N.E.2d at 777 (citing *Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1154 (Ind. 2013)).

# Discussion and Decision

D.W. presents two issues for our review: (1) whether the juvenile court sufficiently complied with the Advisement Statute despite not issuing a formal advisement of D.W.'s rights, and (2) whether D.W.'s counsel's waiver of the advisement was valid under the conditions prescribed by the Juvenile Waiver Statute. First, we find that under a plain reading of the Advisement Statute, the juvenile court erred by failing to provide a formal reading of D.W.'s rights. Second, we find that based on a plain reading of the Juvenile Waiver Statute, counsel's waiver was invalid because the juvenile court did not **personally** confirm the waiver with D.W., and thus he did not waive his right to a formal advisement. However, because we find the juvenile court's failure to advise was harmless under these particular facts, we affirm the juvenile court's delinquency adjudication.

## I. Sufficiency of the Advisement.

We first address the sufficiency of the juvenile court's advisement and whether this deprived D.W. of a fair proceeding. For the following reasons, we find the juvenile court erred by failing to ensure that D.W.

was aware of the rights and dispositional alternatives available to him in the juvenile proceeding.

The Advisement Statute provides as follows:

> The juvenile court *shall* **inform the child** and the child's parent, guardian, or custodian, if the person is present, of the following:
>
> (1) The nature of the allegations against the child.
>
> (2) The child's right to the following:
>
> > (A) Be represented by counsel.
> >
> > (B) Have a speedy trial.
> >
> > (C) Confront witnesses against the child.
> >
> > (D) Cross-examine witnesses against the child.
> >
> > (E) Obtain witnesses or tangible evidence by compulsory process.
> >
> > (F) Introduce evidence on the child's own behalf.
> >
> > (G) Refrain from testifying against himself or herself.
> >
> > (H) Have the state prove beyond a reasonable doubt that the child committed the delinquent act charged.
>
> (3) The possibility of waiver to a court having criminal jurisdiction.
>
> (4) The dispositional alternatives available to the juvenile court if the child is adjudicated a delinquent child.

Ind. Code § 31-37-12-5 (emphasis added).

Here, the juvenile court's advisement covered the information listed in Subsections (1) and (3)—the nature of the allegations and the possibility of transferring jurisdiction to the adult court. However, the juvenile court did not discuss the rights and dispositional alternatives afforded to D.W. under Subsections (2) and (4). D.W. argues that the Advisement Statute's inclusion of "shall" rendered a mandatory obligation upon the juvenile

court to issue a full and formal advisement, and thus its failure to do so constituted error. We agree.

We begin by conducting a plain and ordinary reading of the statute's language, wherein the term "shall" is construed as expressing a mandatory action or obligation. *See Shall*, MERRIAM-WEBSTER, SHALL Definition & Meaning - Merriam-Webster (last visited July 16, 2025) (defining "shall" as "used in laws, regulations, or directives to express what is mandatory"); *Shall*, DICTIONARY.COM, SHALL Definition & Meaning - Dictionary.com (last visited July 16, 2025) (defining "shall" as "(in laws, directives, etc.) must; is or are obliged to"). Our own prior treatment of the term further provides that "[w]hen the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." *United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.*, 549 N.E.2d 1019, 1022 (Ind. 1990) (citing *State ex rel. City of Indianapolis v. Brennan*, 109 N.E.2d 409 (Ind. 1952)).

Based on this reading, the juvenile court has a mandatory obligation to inform the juvenile of the information located within Subsections (1)–(4) of the statute. In fact, as recently as two years ago, we reiterated this obligation in *T.D. v. State*, in which we stated that "Indiana law *requires* the court to 'inform the child' of certain rights" at "the initial hearing." 219 N.E.3d 719, 728 (Ind. 2023) (emphasis added) (citing I.C. § 31-37-12-5(2)). Moreover, there is no indication that the Legislature intended this duty to be merely permissive. While the juvenile court's reading of the advisement may be considered permissive as far as it concerns a juvenile's parent, guardian, or custodian—i.e., the requirement being conditioned upon whether "the person is present"—the same cannot be said as to the juvenile himself. Further, not only does the plain language render the juvenile court's obligation to the juvenile mandatory, but as discussed below, the heightened protections afforded to those in the juvenile system would be undermined should the court's obligation not be met. Thus, it is clear that based on these considerations the juvenile court erred by failing to provide D.W. with a full and formal advisement of his rights and dispositional alternatives.

"Indiana has long been a pioneer in safeguarding a juvenile offender's constitutional rights." *Id.* at 722 (citing Frank Sullivan, Jr., *Indiana as a Forerunner in the Juvenile Court Movement*, 30 IND. L. REV. 279 (1997); Frank Sullivan, Jr., *Selected Developments in Indiana Juvenile Justice Law (1993– 2012)*, 48 IND. L. REV. 1541, 1547–56 (2015)). We understand the crucial differences between an adult criminal and a juvenile delinquent, particularly "[t]hat which would leave a man cold and unimpressed can overawe and overwhelm" a juvenile. *In re Gault*, 387 U.S. 1, 45 (1967). As such, the juvenile system, by design, is fitted with additional measures to ensure that children within the system—unlike adults—"are treated as persons in need of care, protection, treatment, and rehabilitation." Ind. Code § 31-10-2-1(5); *see also In re. K.G.*, 808 N.E.2d 631, 636 (Ind. 2004) (quoting *Bellotti v. Baird*, 443 U.S. 622, 635 (1979)) ("The differences between adult and juvenile courts remain; this is because 'although children generally are protected by the same constitutional guarantees against governmental deprivations as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for "concern, . . . sympathy, and . . . paternal attention."'").

Because of this, we pay special heed to statutes governing the juvenile court system. When the legislature includes certain language, particularly language such as "shall" that instills a duty or obligation upon the trial court, it is intended that this language be followed as written. Not only is this a fundamental tenet of statutory construction, but it is crucial for the inner workings of the juvenile system that the trial court conduct, perform, and otherwise execute whatever statutory instructions are given to ensure the statute's ultimate purpose is served.

Finally, we draw comparison to our decision in *J.M. v. State*, where the juvenile—like D.W. today—argued that "he was not properly advised of his rights as required by [the Advisement Statute]." 727 N.E.2d 703, 703 (Ind. 2000). There, the trial court noted the filing of the advisement of rights to the juvenile and his parents during the initial hearing, the record contained the court's written "Advisement of Rights" as signed by the juvenile's mother, and the court ascertained that the juvenile and his parents understood the statutory and constitutional rights described in the advisement. *Id.* at 704. We concluded that "J.M. ha[d] not established that

the trial court failed to provide the statutory advisement[.]" *Id.* In contrast to *J.M.*, though, here the record does not reflect that D.W. ever received a written advisement of rights despite being promised that he would by the juvenile court. Nor is it shown that the court ascertained D.W. understood the rights prescribed by the advisement; the court only mentioned that someone from the Public Defender Agency would go over the advisement form with him. And although the court noted that D.W. likely signed the aforementioned advisement form, the court explicitly stated on the record that the form had not yet been ordered or brought into the court's electronic database system. Thus, unlike in *J.M.*, we cannot say that D.W. failed to establish a lack of advisement.

For these reasons, we find that the juvenile court erred by failing to adhere to the requirements set forth in the Advisement Statute.

## II. Waiver of the Advisement.

Having confirmed the mandatory nature of the Advisement Statute, we now turn to the State's reply that the issue was waived in the juvenile court. Did the juvenile court sufficiently comply with the procedural requirements set forth in the Juvenile Waiver Statute? Specifically, was there a valid waiver when the court accepted counsel's decision to waive the formal advisement on D.W.'s behalf without also personally confirming the waiver with D.W.? Answering both in the negative, we hold that D.W. did not waive his right to a formal advisement.

Before turning to assess the Juvenile Waiver Statute's procedural requirements regarding waiver, there are two preliminary points we must address.

First, the State argues that D.W. did not waive his constitutional rights but rather a formal reading of his rights, and that D.W. "confuses what is a right that *he* holds and what *duty* the juvenile court had." Essentially, the State asserts that the Juvenile Waiver Statute does not apply to D.W.'s counsel's waiver because (1) that statute only covers constitutional rights and (2) an advisement of rights is not itself a "right" that D.W. is entitled to. As to both assertions, the State's argument misses the mark. A plain

reading of the Juvenile Waiver Statute negates the idea that the statute only covers constitutional rights, as the statute specifically covers "**[a]ny rights** guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, **or any other law**." Ind. Code § 31-32-5-1 (emphasis added). The latter category for "any other law" would include any statutorily conferred rights. Thus, the Juvenile Waiver Statute's broad inclusion of "any rights" suggests that the statute is intended to govern waiver over just that: any right.

And as for the notion that the advisement is not itself a right, a "right" is generally defined as something to which one possesses a just claim, is entitled to, or is legally guaranteed. *See Right*, MERRIAM-WEBSTER, RIGHT Definition & Meaning - Merriam-Webster (last visited July 16, 2025) (defining "right" as "something to which one has a just claim" or "the power or privilege to which one is justly entitled"); *Right*, CAMBRIDGE DICTIONARY, RIGHT - English meaning - Cambridge Dictionary (last visited July 16, 2025) (defining "right" as "someone who has the right to something, or the right to do something, is allowed to have it or do it, often legally or officially"); *see also Right*, Black's Law Dictionary (12th ed. 2024) ("Something that is due to a person by just claim, legal guarantee, or moral principle . . . . A power, privilege, or immunity secured to a person by law[.]"). Where the juvenile court is statutorily mandated to afford D.W. a formal advisement—hence a legal guarantee—it would be trivial to suggest that D.W. is not entitled to as much, especially given the extra protections afforded to juveniles in the juvenile system. Furthermore, if the Legislature did not intend for something like the right to advisement to be covered by the Juvenile Waiver Statute, it could have specified or narrowly tailored the types of "rights" that are subject to the statute. It did not, however, make this indication. Thus, our understanding is that a formal advisement is the kind of statutory "right" that the Legislature intended would be subject to the Juvenile Waiver Statute.

Second, the mandatory nature of the Advisement Statute's "shall" language begs the question of whether the rights conferred by the statute are waivable in the first place. Returning to the plain language of the Juvenile Waiver Statute, the Legislature's decision to include broad language like "any rights" suggests it would indeed be waivable. *See* I.C. §

31-32-5-1. To conclude otherwise would undermine the very purpose of the Juvenile Waiver Statute, which is to permit waiver of "any rights guaranteed to a child," so long as certain procedural requirements are satisfied. Put another way, the Legislature knows how to draft a statute in such a way as to except particular items from coverage; where it does not do so, it does not intend for there to be an exception. *See, e.g.*, *Gierek v. Anonymous 1*, 250 N.E.3d 378, 399 (Ind. 2025) ("Finally, and perhaps most importantly, this Court's acceptance of the Hospital's argument would effectively eliminate class actions from all medical-malpractice claims. The legislature clearly knows how to eliminate—and, in fact, has eliminated—this procedural device in other contexts."); *Holcomb v. City of Bloomington*, 158 N.E.3d 1250, 1257 (Ind. 2020) ("The legislature clearly knows how to provide for enforcement of annexation statutes through the remonstrance process, but it did not do so with Section 11.8."); *KS&E Sports v. Runnels*, 72 N.E.3d 892, 901 (Ind. 2017) ("The legislature knows how to insulate a seller from non-damages claims. . . . The legislature's notable failure to extend the same broad immunity under [Section 34-12-3-3(2)] when a third party misuses a firearm cannot be chalked up to oversight."); *Ind. Bell Tel. Co. v. Ind. Util. Regul. Comm'n*, 715 N.E.2d 351, 357 (Ind. 1999) ("Indiana has chosen to regulate holding companies in other regulated industries and knows how to write a statute to accomplish that if it is the desired goal."). Therefore, we clarify that even rights conferred as part of a court's mandatory duties may be waived by the child.

Having addressed these points, we now assess the Juvenile Waiver Statute's procedural components.

When the Legislature recodified the juvenile code, it did so with the express purpose of providing "a judicial procedure that insures fair hearings and recognizes and enforces the constitutional and other legal rights of children and their parents." *T.D.*, 219 N.E.3d at 724 (quoting Pub. L. No. 136, § 1, 1978 Ind. Acts 1196, 1197); *see also* I.C. § 31-10-2-1(11) (same).[2] This underlying purpose of protecting children includes additional measures regarding the waiver of rights because "admissions

---

[2] This statute was recently amended during the 2025 legislative session. *See* P.L. 179-2025, § 6 (reordering Subsection (11) as Subsection (13)).

and confessions of juveniles require special caution." *Patton v. State*, 588 N.E.2d 494, 495 (Ind. 1992) (quoting *Gault*, 387 U.S. at 45). Both the Legislature and our courts have taken the precautionary steps of developing a safety mechanism to ensure that any waiver of a juvenile's rights, whether constitutional, statutory, or otherwise, was done voluntarily and with the child's knowledge. *See T.D.*, 219 N.E.3d at 724 (citing *Hickman v. State*, 654 N.E.2d 278, 281 (Ind. Ct. App. 1995) ("And so, to ensure a child knowingly and voluntarily waives their rights before entering an admission, our Legislature has codified safeguards that require strict compliance.").

An example of this safety mechanism is the Juvenile Waiver Statute, which provides the following:

> Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or *any other law* may be waived:
>
> (1) by counsel retained or appointed to represent the child if **the child knowingly and voluntarily joins with the waiver**;
>
> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
>
> > (A) that person knowingly and voluntarily waives the right;
> >
> > (B) that person has no interest adverse to the child;
> >
> > (C) meaningful consultation has occurred between that person and the child; and
> >
> > (D) **the child knowingly and voluntarily joins with the waiver**; or
>
> (3) by the child, without the presence of a custodial parent, guardian, or guardian ad litem, if:
>
> > (A) **the child knowingly and voluntarily consents to the waiver**; and
> >
> > (B) the child has been emancipated under IC 31-34-20-6 or IC 31-37-19-27 . . . .

I.C. § 31-32-5-1 (emphases added).

As the plain language of the Juvenile Waiver Statute shows, a trial court cannot accept a juvenile's waiver without establishing that the juvenile either knowingly and voluntarily joins any waiver of rights by an adult under Subsections (1) and (2), or knowingly and voluntarily consents to a waiver under Subsection (3). Moreover, as we previously discussed in *T.D.*, "[b]y permitting a court to find waiver in only these limited circumstances, 'the [Juvenile Waiver Statute] affords juveniles with greater rights than the Constitution requires.'" *T.D.*, 219 N.E.3d at 725 (quoting *R.R. v. State*, 106 N.E.3d 1037, 1043 (Ind. 2018)). As such, we have held that "our trial courts must take particular care to ensure a valid waiver of rights[.]" *Id.*

Here, D.W. claims he was deprived of a formal advisement of rights and dispositional alternatives under Subsections (2) and (4) of the Advisement Statute. And as stated above, for purposes of the Juvenile Waiver Statute, the Advisement Statute, which constitutes "any other law," guarantees a juvenile a right to a formal advisement. Thus, for a valid waiver of that right to occur, not only must an adult (counsel or custodian) waive the right, but the *child himself* must "knowingly and voluntarily" join with the waiver.

The record shows that during the initial hearing, the court asked D.W.'s counsel, "[D]oes [D.W.] waive any further formal reading of his rights and dispositional alternatives and enter denial to the charges today?" D.W.'s counsel responded by stating, "[D.W.] does waive further readings, your honor and yes, please enter denials." Following this exchange, the court, immediately and without first confirming whether D.W. knowingly and voluntarily wished to join counsel's waiver of the advisement, addressed D.W. with the following:

> [T]here will be a form with [sic] listing all of your rights and disposition alternatives and you most likely have already signed it and it hasn't been or ordered or brought into the court's electronic database system. But there'll be a form listing your rights and dispositional alternatives. Uh Mr. Thurston or someone from the Public Defender Agency will

go over those with you. They're just a listing of all the rights that you have at this point. You're not giving up or waiving any right at this point. So they will provide that to you and I will enter a denial on your behalf. So formally, you have denied the charges.

Based on a plain reading of the Juvenile Waiver Statute and the record before us, it is clear that the juvenile court's acceptance of counsel's waiver on D.W.'s behalf was invalid. For the waiver to comply with the requirements of Subsection (1) of the Juvenile Waiver Statute, the juvenile court needed to ensure that D.W. "**knowingly and voluntarily join[ed]** with the waiver" of appointed counsel. *See* I.C. § 31-32-5-1(1) (emphasis added). Generally, a juvenile court would assess the "knowing and voluntary" requirement by analyzing the circumstances of the waiver in light of statutorily provided factors. *See* Ind. Code § 31-32-5-4. However, to do so would first require a "personal interrogation" of the juvenile by the trial judge to determine whether the juvenile understood the rights they were giving up, and further, whether they agreed to proceed with the waiver. *See Patton*, 588 N.E.2d at 496 ("[B]oth the adult and child must knowingly and voluntarily waive the child's rights."); *T.D.*, 219 N.E.3d at 729 (citing *N.M. v. State*, 791 N.E.2d 802, 806–07 (Ind. Ct. App. 2003)) ("[T]he court must also personally question the juvenile and his parent, if present, on the record as to whether both understand and voluntarily waive the juvenile's rights."). While the juvenile court's discussion with counsel may have reflected counsel's decision to waive the reading of rights, the court failed to **personally interrogate** D.W. as to whether D.W. wished to do the same. Without first assessing D.W., it was impossible for the juvenile court to reach the "knowing and voluntary" analysis as it pertained to him. Thus, because the procedural safeguards surrounding juvenile waiver require "strict compliance," we cannot permit the waiver to stand. *See T.D.*, 219 N.E.3d at 724 (citing *Hickman*, 654 N.E.2d at 281); *Tingle v. State*, 632 N.E.2d 345, 351 (Ind. 1994).

Finally, we take this time to offer guidance regarding the interplay between the Advisement and Juvenile Waiver Statutes. Because the juvenile court is mandatorily obligated to inform the juvenile of the contents prescribed by the Advisement Statute, the court is, at a

minimum, required to inform the juvenile that *he has a right to receive* the formal advisement. It is at this point that the juvenile may decide to waive the full and formal advisement, and, if so, the court must then proceed with ensuring that the procedural requirements for a valid waiver under the Juvenile Waiver Statute are satisfied. And to emphasize once more, the court's assurance that these requirements have been met must be done through **personal interrogation** of the juvenile and without regard for whether the juvenile had the benefit of representation by counsel. *See T.D.*, 219 N.E.3d at 729 (citing *D.D.B. v. State*, 691 N.E.2d 486, 487 (Ind. Ct. App. 1998)) ("Finally, we acknowledge, as the trial court pointed out, that T.D. was represented by counsel 'at every stage of the juvenile proceedings.' But, under the statute, simply being represented by counsel does not establish that T.D. knowingly and voluntarily waived each of the rights conferred on him through state or federal law.").

In many cases, the time it would take a juvenile court to secure a waiver of advisement might exceed the time it would take to simply provide the juvenile with the formal advisement of rights. We thus encourage trial courts to err toward providing a formal advisement as required by the Advisement Statute. And we hold a juvenile court may only accept a waiver of a formal advisement when the procedural requirements of the Juvenile Waiver Statute are met. Therefore, based on the considerations described above, we find that D.W. did not waive his right to a formal advisement.

## III. The Juvenile Court's Error Was Harmless Because It Did Not Affect D.W.'s Substantial Rights.

Having determined that the juvenile court erred by not issuing a full and formal advisement to D.W. and that D.W. did not waive his right to the advisement under the Juvenile Waiver Statute, we are left to consider whether the court's error warrants reversal.

We must first consider the appropriate lens through which the error should be reviewed. Throughout the appellate proceedings, D.W.

portrayed the failure to advise as one of fundamental error. The Court of Appeals subsequently reviewed it under that standard. *See D.W.*, No. 23A-JV-2775, at *4. Both sides have continued to argue the case as one involving fundamental error, bearing in mind it is a tall hill for appellants to climb to get appellate review in cases where they have failed to preserve an issue in the trial court. *See Kelly v. State*, 122 N.E.3d 803, 805 (Ind. 2019) ("Fundamental error is an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal."). We need not subject D.W. to this higher burden herein because we find no waiver. We thus perform a merits review to determine if the error requires reversal or is harmless in the circumstances. An error is harmless, and thus does not warrant reversal, where its "probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." Ind. Appellate Rule 66(A); *Hayko v. State*, 211 N.E.3d 483, 488, 492 (Ind. 2023) (providing that Rule 66(A)'s "probable impact test" controls for determining whether a non-constitutional error is harmless).

Given the particular facts presented to us in this matter, the juvenile court's failure to advise—while no less a violation of its statutory duty—was ultimately harmless.

The record before us does not demonstrate that D.W.'s substantial rights were prejudiced by the juvenile court's failure to provide a formal advisement. First, we cannot locate anything in the record showing that D.W. unknowingly or involuntarily waived any of the rights that would have been discussed had the juvenile court issued the full advisement. Indeed, the record reflects that D.W. exercised his constitutional rights by (1) having counsel represent him throughout the entirety of the proceedings, (2) confronting witnesses, (3) cross-examining witnesses, (4) calling a witness to testify on his behalf, and (5) holding the State to its burden of proving the delinquency beyond a reasonable doubt. In addition, while D.W. may have waived his right not to testify, the record shows that the juvenile court not only informed him of the right at length, but that D.W. knowingly and voluntarily waived the right and then proceeded to testify as part of his defense strategy. While D.W. argues the

failure to formally read him his rights impacted his overall defense strategy, it is not clear what more D.W. could or would have done differently. As we are ultimately bound to the facts before us, and because it is not shown how the end result would have changed if a formal advisement had been given, we simply cannot find that any substantial rights were affected. The error was therefore harmless.[3]

# Conclusion

Our holding today clarifies two points. First, a juvenile court has a mandatory obligation to offer a formal advisement of rights under the Advisement Statute. Second, waiver of a juvenile's constitutional, statutory, or otherwise afforded rights must be done through **personal** interrogation of the juvenile himself by the court to ensure the waiver was knowing and voluntary. Through these clarifications, we find that the juvenile court erred by failing to provide D.W. with a formal reading of rights and dispositional alternatives. Moreover, we find that D.W. did not waive his formal advisement of rights given the juvenile court's failure to conduct a personal interrogation of D.W. However, because D.W.'s substantial rights were not prejudiced under these particular facts, we find the juvenile court's error was harmless. Therefore, we affirm the juvenile court's delinquency adjudication.

Rush, C.J., and Slaughter, Goff, and Molter, JJ., concur.

---

[3] In *T.D.*, we previously stated that "Trial Rule 60(B)(8) is the proper vehicle for juveniles to collaterally attack an adjudication based on an invalid waiver of rights." *T.D.*, 219 N.E.3d at 727. Here, D.W. did not seek relief from judgment at any stage of the proceedings. Because we find harmless error, we need not touch on that issue in greater detail.

ATTORNEYS FOR APPELLANT
Talisha R. Griffin
Casey A. Farrington
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Indiana Attorney General

Caroline G. Templeton
Supervising Deputy Attorney General
Indianapolis, Indiana

Jodi K. Stein
Deputy Attorney General
Indianapolis, Indiana